# In United States Court of Appeals for the Eleventh Circuit

**56 Forsyth Street, NW**
**Atlanta, Georgia 30303**



MAR 03 2016

ATLANTA, GA.

| | |
|---|---|
| Moshea John Jones, a/k/a Gerry W. Complainant (Appellant) (Petitioner), | **[Appeal and/or] Agency Review** |
| | OFO Docket No: **0120131578;** |
| v. | 0120122573, [Agency No: **HHS-OS-0013-2010** EEOC Case No: 410-2011-00227X |
| | 0120122702 [Agency No: **HHS-OS-0034-2010** EEOC Case No: Hearing Requested *(see OFO APPEAL Form 573 DOCKET NO 0120131578* |
| ʹlvia Mathews Burwell, Secretary, S. Department of Health & Human Services, Agency. | Date: **3 March 2016** |

Appellant THEN Office of Inspector General (OIG) Department of Health and Human Services (HHS), Office of the Secretary (OS), Office of Audit Services, Region IV, Information Technology Auditor Law-enforcement official, M. John Jones, moves once again to reaffirm Class Complainant because there is a Fed. R. Civ. P. (FRCP) 23 situation, a FRCP Rule 52(b) situation, and a FRCP Rule 54(b) situation that should be addressed before petition of direct review to Supreme Court under 28 U.S.C. § 1254(2); 28 U.S.C. §§ 1343(a) and (b)(1) for 42 U.S.C. § 1985 violation(s) against Americans with disability/disabilities by United States HHS OS

## NOTICE/PETITION FOR AGENCY REVIEW AND SAMPLE FROM APPEAL BRIEF THAT BEGIN FROM CERTITICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE AND INCUDED SECLECTED SECTIONS FROM THE APPELLANT'S APPEAL BRIEF TO BE FILED ONCE DOCKET NO. IS ISSUED FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

FROM OFFICE OF FEDERAL OPERATIONS
**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
P. O. Box 77960
Washington, D.C.  20013

Moshea John Jones
310 Woodstock Dr. SW
Atlanta, GA 30331







## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P.O. Box 77960
### Washington, DC 20013

Moshea J. Jones,
Complainant,

v.

Kathleen Sebelius,
Secretary,
Department of Health and Human Services,
Agency.

Appeal Nos. 0120122573, 0120122702

Agency Nos. HHS-OS-0013-2010, HHS-OS-0034-2010

Hearing No. 410-2011-00227X (for Appeal No. 0120122573)

### DECISION

Complainant filed two separate appeals from two separate final decisions dated April 20, 2010, and May 24, 2010. In a final decision dated April 20, 2010, the Agency implemented the determination of an Administrative Judge, finding no discrimination. In a final decision dated May 24, 2010, the Agency dismissed a formal complaint. Complainant's appeals on both decisions are timely, regarding unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. We exercise our discretion to consolidate the appeals for joint processing, pursuant to 29 C.F.R. § 1614.606.

### BACKGROUND

Appeal No. 0120122573, Agency No. HHS-OS-0013-2010

On April 6, 2010, Complainant filed a formal complaint.[1] The Agency accepted the following three claims for investigation:

---

[1] In its final decision, the Agency identified the date of filing (identified as "DOF") as "05/15/2010." However, other documents of record identify the filing date of the formal complaint as April 6, 2010.

2                          0120122573, 0120122702

You alleged you were discriminated against based on your disability (mental), retaliation (prior EEO activity), subjected to a hostile work environment on the basis of disability when

1.  on January 28, 2010, you were terminated from employment;

2.  from June 7, 2009 – January 30, 2010, you were denied Reasonable Accommodations; and

3.  from July 7, 2009 – January 30, 2010, you were denied Evaluations since your employment to the Agency.

Following an investigation of these three claims, Complainant requested a hearing before an EEOC Administrative Judge (AJ).

On April 11, 2012, the AJ issued an Order Entering Judgment, finding no discrimination. On April 20, 2012, the Agency issued a final decision, implementing the AJ's finding of no discrimination.


Appeal No.  0120122702, Agency No. HHS-OS-0034-2010

On March 16, 2010, Complainant contacted the Agency's EEO office.  Informal efforts to resolve Complainant's concerns were unsuccessful.

On May 15, 2010, Complainant filed a formal complaint alleging that the Agency subjected her to discrimination on the bases of disability and reprisal for prior protected EEO activity when:

1.  from June 7, 2009 to January 28, 2010, she was denied reasonable accommodation;

2.  from July 7, 2009 to January 28, 2010, she was denied performance evaluations; and

3.  on January 28, 2010, she was terminated from employment.

In its final decision dated May 24, 2010, the Agency dismissed the formal complaint pursuant to 29 C.F.R. § 1614.107(a) (2), on the grounds of untimely EEO Counselor contact.  The Agency found that the last alleged discriminatory event occurred on January 28, 2010, but that Complainant did not initiate EEO counseling until March 16, 2010, beyond the required 45-day limitation period.

The instant appeals followed.

3                                   0120122573, 0120122702

## ANALYSIS AND FINDINGS

Upon review, we note that the instant appeals address two different Agency decisions on virtually the identical three matters. Specifically, the formal complaint (Agency No. HHS-OS-0013-2010) that is the subject of Appeal No. 0120122573 addresses the issues of termination from Agency employment in January 2010; denial of reasonable accommodation from June 2009 through January 2010; and denial of evaluations from July 2009 through January 2010. The claims in Appeal No. 0120122573 were the subject of a decision by an AJ on the merits of the claims, implemented by the Agency.

On the other hand, the formal complaint that is the subject of Appeal No. 0120122702 addresses the following three claims: termination from Agency employment in January 2010; denial of reasonable accommodation from June 2009 through January 2010; and denial of evaluations from July 2009 through January 2010. These appear to be the identical issues to the ones addressed by the AJ and Agency in Agency No. HHS-OS-0013-2010 (Appeal No. 0120122573). However, this formal complaint was dismissed on the grounds of untimely EEO Counselor contact.

We can discern nothing from the present record in either case to explain the above-referenced discrepancy between these two cases. As a consequence of the conflicting dispositions, we are unable to determine the Agency's ultimate outcome of the three matters that are the subject of both appeals.

Accordingly, the Agency final decisions in the captioned complaints are VACATED. The formal complaints are REMANDED to the Agency for further processing in accordance with the ORDER below.

## ORDER

Within thirty days of the date that this decision becomes final, the Agency shall issue a new final decision on the three claims raised in both cases regarding Complainant's termination (January 2010); denial of reasonable accommodation (June 2009 – January 2010); and denial of evaluations (July 2009 – January 2010). The new final decision must include appeal rights to the Commission. A copy of the new final decision must be sent to the Compliance Officer as referenced below.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0610)

Compliance with the Commission's corrective action is mandatory. The Agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC

4                               0120122573, 0120122702

20013. The Agency's report must contain supporting documentation, and the Agency must send a copy of all submissions to the Complainant. If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

5                              0120122573, 0120122702

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0610)

This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

_Carlton M. Hadden_

Carlton M. Hadden, Director
Office of Federal Operations


**DEC 1 3 2012**
Date

6                          0120122573, 0120122702

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Moshea J. Jones
310 Woodstock Dr  SW
Atlanta, GA  30331


Bonita V. White, Director
EEO Compliance and Operations Division
Department of Health and Human Services
200 Independence Ave., SW Room 347-F
Washington, DC  20201


_____DEC 1 2 2012_____
Date

_____
Equal Opportunity Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Moshea J. Jones, a/k/a
Gerry W.,[1]
Complainant,

v.

Sylvia Mathews Burwell,
Secretary,
Department of Health and Human Services,
Agency.

Appeal No. 0120131578

Hearing No. 410-2011-00227X

Agency Nos. HHS-OS-0013-2010, HHS-OS-0034-2010

## DECISION

On March 16, 2013, Complainant filed an appeal from the Agency's January 16, 2013, final decision concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission AFFIRMS the Agency's final decision.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as an Auditor, GS-0511-05, with the Agency's Office of Audit Services (OAS) located in Atlanta, Georgia. Complainant was hired by the Agency effective June 7, 2009, as part of the Federal Career Internship Program (FCIP) and was subject to a two-year probationary period. During the relevant time, Complainant's first level supervisor was the Audit Manager (S1) and his second level supervisor was the Regional Inspector General for Audit Services (S2). Complainant was terminated by the Agency in January 2010.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

0120131578

Agency No. HHS-OS-0013-2010

On January 22, 2010, Complainant contacted the Agency's EEO Office. Informal efforts to resolve Complainant's concerns were unsuccessful.

Complainant filed an EEO complaint on April 6, 2010. The Agency accepted the following three claims for investigation: Complainant alleged he was discriminated against on the bases of disability, retaliation (prior EEO activity), and subjected to a hostile work environment on the basis of disability when:

1. On January 28, 2010, he was terminated from employment;
2. From June 2009 – January 30, 2010, he was denied reasonable accommodations; and
3. From July 7, 2009, through January 30, 2010, he was denied an evaluation since his employment with the Agency.

At the conclusion of the investigation on these three claims, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant requested a hearing and the AJ held a hearing on November 2, 2011, and January 27, 2012. On April 11, 2012, the AJ issued an Order Entering Judgment, finding no discrimination.

The AJ noted that Complainant alleged that he was denied a reasonable accommodation when the Agency refused to allow him to use recording devices during audit meetings and was denied a large screen monitor for his computer. The AJ found Complainant established a long record of learning disabilities that resulted from his Attention Deficit Hyperactivity Disorder (ADHD). The AJ found Complainant was a qualified individual with a disability.

The AJ noted that the Agency asserted Complainant was not even entitled to the two accommodations listed and cited the testimony of its two expert witnesses. The AJ agreed with the Agency's proposition. However, the AJ stated assuming the accommodations were needed for Complainant to perform his job, the claim still fails. First, the AJ noted that Complainant was not outright denied the use of the recorder; rather he was denied the use of the recorder during auditee interviews. Second, the AJ stated Complainant did not show how a request for a large screen monitor was an accommodation for his disability. The AJ noted Complainant did not assert that his ADHD interfered with his vision. In addition, the AJ noted the accommodation was denied because the computers were manufactured with the ability to create a larger text on the screen.

Regarding the recording device, the AJ stated that even assuming the refusal to use a recording device during auditee interviews equated to a failure to accommodate, the Agency has shown such usage would pose an undue burden. Specifically, the AJ noted that while the cost of the requested accommodation was zero, the negative impact of the requested accommodation was high. The AJ stated that during audits, the Agency wanted auditees to be forthcoming and

3                                    0120131578

feared that a recording device would cause them to "freeze." The Agency found this was a legitimate concern. Moreover, the AJ noted Complainant was provided the opportunity to take notes using his laptop computer during the auditee interviews.

With regard to Complainant's termination, the AJ found the Agency articulated a legitimate, nondiscriminatory reason for taking the adverse action. The AJ noted that in the termination letter, the Agency informed Complainant that he was terminated due to his failure to collaborate with others, inability to effectively communicate, and his integrity issues. The AJ noted the Agency submitted evidence demonstrating Complainant had difficulty collaborating with others, particularly regarding the audit templates and his overall disdain for his Auditor In Charge (Person C). The AJ noted the Agency also proffered evidence regarding Complainant's inability to effectively communicate. The AJ also found the Agency submitted evidence regarding Complainant's integrity issues, particularly regarding his computer issue. The AJ determined Complainant failed to show the Agency's proffered reasons for his termination were pretextual.

With regard to the denial of a performance evaluation, the AJ stated that she assumed that the denial of an evaluation constituted an adverse action. The AJ noted that Agency supervisors are required to meet with employees twice during the year for formal evaluations. The AJ noted that an end of the year evaluation is given to employees between January 1 and February 15. The AJ noted Complainant was placed on a performance plan on June 9, 2009. The AJ recognized that on September 25, 2009, Complainant and S1 discussed his performance plan and the areas he needed to improve. The AJ noted that at his termination meeting, Complainant requested a final performance evaluation, but S1was not finished drafting it. The AJ explained that S1 later finished the evaluation by February 15, 2010, but had a hard time giving it to Complainant as S1's efforts to contact Complainant via electronic mail and telephone were futile. The AJ found Complainant did not show the Agency proffered reason for its actions was pretextual.

With regard to his hostile work environment claim, the AJ found Complainant failed to submit evidence showing, or even remotely allowing an inference, that the managers or fellow employees at the Agency subjected him to unwelcome verbal or physical harassment based on his statutorily protected class.

The Agency issued a final decision on April 20, 2010. The Agency's final decision fully implemented the AJ's finding of no discrimination.

Agency No. HHS-OS-0034-2010

On March 16, 2010, Complainant contacted the Agency's EEO Office. Informal efforts to resolve Complainant's concerns were unsuccessful.

4                                        0120131578

On May 15, 2010, Complainant filed a formal complaint alleging that the Agency subjected him to discrimination on the bases of disability and reprisal for prior protected EEO activity when:

1. From June 7, 2009, to January 28, 2010, he was denied reasonable accommodation;
2. From July 7, 2009, to January 28, 2010, he was denied performance evaluations; and
3. On January 28, 2010, he was terminated from employment.

On May 24, 2010, Agency issued a final decision dismissing Complainant's complaint pursuant to 29 C.F.R. § 1614.107(a)(2), on the grounds of untimely EEO Counselor contact. The Agency found the last alleged discriminatory event occurred on January 28, 2010, but that Complainant did not initiate EEO counseling until March 16, 2010, which it found was beyond the required 45-day limitation period.

Appeal Nos. 0120122573, 0120122702

Complainant filed two separate appeals from the two separate final decisions dated April 20, 2010, and May 24, 2010. The Commission consolidated the two separate appeals for joint processing. The Commission noted the two Agency decisions addressed virtually identical matters and in one decision the Agency implemented an AJ's finding of no discrimination on the merits. However, in another final decision the Agency dismissed the complaint on the grounds of untimely EEO Counselor contact. The Commission found nothing from the record explained the discrepancy between the two cases. As a consequence of the conflicting dispositions, the Commission found it was unable to determine the Agency's ultimate outcome of the three claims raised in both appeals. Thus, the Commission vacated both final decisions and ordered the Agency to issue a new final decision on the three claims raised in both appeals regarding Complainant's termination (January 2010); denial of reasonable accommodation (June 2009 – January 2010); and denial of evaluations (July 2009 – January 2010).

On January 16, 2013, the Agency issued a final decision fully implementing the AJ's finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged.

## ANALYSIS AND FINDINGS

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. See Pullman-Standard Co. v. Swint, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held.

0120131578

An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony or the testimony so lacks in credibility that a reasonable fact finder would not credit it. See EEOC Management Directive 110, Chapter 9, at § VI.B. (Aug. 5, 2015).

At the outset, we note Complainant submitted several appeal briefs in this case. The Commission will only consider the briefs that were timely submitted. The Commission granted several extensions to allow Complainant time to submit a brief. The last extension granted by the Commission gave Complainant until August 16, 2013, to submit any brief or statement in support of his appeal. Thus, any submission filed by Complainant after August 16, 2013, will not be considered.

As a preliminary matter, the Commission finds, contrary to Complainant's assertions on appeal, that the AJ did not exhibit any bias. After a careful review of the record, the Commission determines that the AJ's findings of fact are supported by substantial evidence in the record and that the AJ's decision properly summarized the relevant facts and referenced the appropriate regulations, policies, and laws. We find the record in the present case fully developed. We discern no basis to disturb the AJ's decision.

We note on appeal Complainant references an attempt to have his complaint certified as a class complaint. The record reveals that on the second day of the hearing, Complainant attempted to have his case certified as a class complaint. In response, the AJ stated that she had not seen any evidence to make the matter a class complaint. The AJ noted that Complainant did not identify anybody that was part of a class and she stated "at this late of date, I'm not certifying this case as a class case. The case has got three witnesses left." Upon review, we find no abuse of discretion by the AJ refusing to certify the matter as a class complaint.

Complainant also argues on appeal that the AJ improperly allowed two Agency experts to testify: a forensic psychologist and a psychiatrist. Complainant claimed that he suffered from ADHD and learning disabilities and that the Agency denied him reasonable accommodations and subjected him to discrimination when they terminated him. The Agency's medical experts testified regarding Complainant's diagnosed ADHD, Complainant's medications, and his requested accommodations. Additionally, the medical experts provided their opinion regarding Complainant's performance problems identified by the Agency and their relationship to his ADHD. The Commission notes that AJs have broad discretion in the conduct of hearings, including admission of evidence and witness selection. 29 C.F.R. § 1614.109(e). Upon review, we find the AJ did not abuse her discretion by allowing the Agency's medical experts to testify during the hearing.

Denial of Reasonable Accommodation

With regard to Complainant's claim that he was denied a reasonable accommodation, we note that Complainant requested several accommodations while working for the Agency. Initially, Complainant requested noise cancellation headphones from the Agency on June 12, 2009.

6                                          0120131578

While Complainant was engaging in the interactive process with the Agency regarding what type of noise cancellation headphones he wanted, he sent the same request for noise cancellation headphones to the Department of Defense's Computer/Electronic Accommodations Program (CAP) on July 17, 2009. The record reveals that on July 30, 2009, CAP ordered Complainant the specific noise cancellation headphones he requested. Complainant acknowledged he subsequently received the noise cancellation headphones. He did not claim the noise cancellation headphones were not an effective accommodation.

Complainant also requested the use of a digital recorder as a reasonable accommodation. We find substantial evidence supports the AJ's finding that Complainant was not outright denied the use of the recorder; however, he was denied the use of the recorder during auditee interviews. The Agency stated that the use of a recording device during auditee interviews would constitute an undue burden since the Agency wanted auditees to "open up" during audits and feared that a recording device would cause them to freeze. Moreover, we note the record reveals that Complainant was provided the opportunity to take notes using his laptop computer during auditee interviews.

Additionally, we note that during the relevant time Complainant requested the following software programs directly from the Department of Defense's Computer/Electronic Accommodations Program (CAP): a Tadi-Phone Dialer, SoothSayer Word Prediction software, Write: OutLoud software, and a ZoomText Magnifier/Reader. Complainant acknowledges receiving all of the software he requested from CAP. [2] However, he claims the Agency failed to have the software installed on his computer. For purposes of this decision, we assume the identified software was a reasonable accommodation for Complainant's stated disability. The record reveals that Complainant was informed by S1 and the Supervisory IT Specialist that he needed to have Agency approval prior to having the software installed on his computer. The Agency provided Complainant the necessary form to fill out in order to have the software approved. Complainant failed to fill out the form and submit it to the Supervisory IT Specialist. As a result of Complainant's failure to follow the Agency's stated procedure for having the various software programs installed on his government-issued laptop, the software was not installed on Complainant's computer. Thus, we find no denial of accommodation by the Agency with regard to the software identified.

Finally, Complainant requested a larger monitor from the CAP in August 2009. CAP informed Complainant that it would not provide the larger monitor because agencies typically provide monitors with magnifying capabilities. Thereafter, Complainant requested the Agency provide him with a larger monitor. The Agency did not provide Complainant a larger monitor and relied on the same reasons provided by CAP. In addition, S1 noted that Complainant had not asserted any sort of vision disability. At the time of his request, Complainant had two monitors, his notebook computer monitor, and a 17 inch external monitor. The record reveals that S1 offered to show Complainant how he could magnify items on his computer screen and use the two monitors together to see more clearly. Upon review, the Commission finds

---

[2] Complainant returned the SoothSayer Word Prediction software after receiving it because it did not help him.

7                                              0120131578

substantial evidence supports the AJ's finding that Complainant did not show how a request for a large screen monitor was an accommodation for his disability.

Moreover, we note that Complainant subsequently asked the CAP to provide him Zoomtext Magnifier software sometime in the fall, which Complainant received in approximately October 2009. During the hearing, Complainant testified that he requested Zoomtext for the same purpose he requested a larger monitor, for the purpose of resolution. Complainant did not show that the Zoomtext was not an effective accommodation.

Upon review, we find Complainant failed to show that the Agency denied him a reasonable accommodation for his alleged disabilities. Additionally, we find no evidence that the Agency unreasonably delayed in addressing any of Complainant's reasonable accommodation requests.

Termination

The Agency has articulated legitimate, nondiscriminatory reasons for terminating Complainant: his failure to collaborate with others; inability to effectively communicate; and his integrity issues. Complainant failed to show that the articulated reasons were a pretext for discrimination or retaliation.

Evaluation

Upon review, we find the Agency articulated a legitimate, nondiscriminatory reason for not providing Complainant an evaluation while he was employed at the Agency. The Agency stated that evaluations were not due in their final form until February. As Complainant was terminated from the Agency in January, his final evaluation was not completed at the time of his termination. Moreover, we note the Agency showed a good faith effort to contact Complainant to deliver his evaluation after his termination; however, Complainant would not return phone calls or electronic mail messages. Complainant failed to show that the articulated reason was a pretext for discrimination or retaliation.

Harassment

Complainant also alleged that he was subjected to harassment while employed at the Agency. Upon review, we find Complainant failed to establish that he was subjected to harassment based on his statutorily protected classes.

CONCLUSION

Accordingly, the Agency's final decision finding no discrimination is AFFIRMED.

8                                           0120131578

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0815)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or

9                                                    0120131578

costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission. The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

December 17, 2015
Date

0120131578

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to the following recipients on the date below:

Moshea J. Jones
310 Woodstock Dr  SW
Atlanta, GA  30331


Cynthia Richardson-Crooks, J.D., Director
EEO Compliance and Operations Division
Department of Health and Human Services
Mary E. Switzer Building
330 C St., SW, Suite 2200
Washington, DC  20201


December 17, 2015
Date

Compliance and Control Division



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, S.W.
Suite 4R30
Atlanta, GA 30303
(404) 562-6887
TTY (404) 562-6801
FAX (404) 562-6905
1-800-669-4000

| | |
|---|---|
| Moshea John Jones,<br>Complainant,<br><br>v.<br><br>Kathleen Sebelius,<br>Secretary,<br>Department of Health and Human Services,<br>Agency. | ) EEOC No. 410-2011-00227X<br>) Agency No. HHS-OS-0013-2010<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Date: April 11, 2012 |

### ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated 11-APR-12, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached.

This office is also enclosing a copy of the hearing record for the agency and a copy of the transcript for complainant and/or his/her representative.

This office will hold the report of investigation and the complaint file for sixty days, during which time the agency may arrange for their retrieval. If we do not hear from the agency within sixty days, we will destroy our copy of these materials.

It is so ORDERED.

For the Commission:

Lana Layton
Administrative Judge
Telephone: (404) 562-6819
Facsimile: (404) 562-6905

recovery key                    U

QVTO TDGP MRLA KJ3L

ENDH QGCW

**CERTIFICATE OF SERVICE**

For timeliness purposes, it shall be presumed that the parties received the foregoing Order Entering Judgement within five (5) calendar days after the date it was sent *via* First Class Mail.  I certify that on April 11, 2012, the foregoing Order Entering Judgement was sent *via* First Class Mail to the following:

Moshea John Jones
310 Woodstock Drive
Atlanta, GA 30331

Reynolds Wilson, Senior Counsel
Office of Counsel to the Inspector General
Department of Health and Human Services
330 Independence Avenue, SW
Room 5527, Cohen Building
Washington, DC  20201

Bonita V. White, Director
Department of Health and Human Services
Hubert H. Humphrey Bldg., Room 347-F
200 Independence Avenue, SW
Washington, DC  20201

Joyce Rollins
Legal Technician

2

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## ATLANTA DISTRICT OFFICE

| | | |
|---|---|---|
| **MOSHEA JOHN JONES,** | ) | **EEOC NO. 410-2011-00227X** |
| **COMPLAINANT,** | ) | |
| | ) | |
| **V.** | ) | **AGENCY NO.** |
| | ) | **HHS-OS-0013-2010** |
| **KATHLEEN SEBELIUS,** | ) | |
| **HEALTH AND HUMAN SERVICES,** | ) | |
| **AGENCY.** | ) | |
| | ) | |

### I.  SUMMARY

For the reasons set forth below, this Decision finds the Complainant was not discriminated against on the basis of disability when he was denied a reasonable accommodation, was not discriminated against on the basis of disability when he denied a performance evaluation, was not unlawfully terminated on the basis of disability, was not subjected to a hostile work environment, and was not retaliated against for prior EEO activity at the Department of Health and Human Services.

### II.  JURISDICTION

Jurisdiction for this case arises under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq (as amended). Authority to conduct this Hearing is found in 29 C.F.R. § 1616.109.

### III. FACTS

Moshea John Jones (hereinafter "Complainant"), proceeding pro se, brings this complaint against the United States Department of Health and Human Services (hereinafter "HHS" or "Agency") alleging failure to accommodate a disability, discrimination on the basis of

1

disability (ADHD), retaliation for prior EEO activity, and a hostile work environment on the basis of disability.

Complainant began employment with the Agency as part of the Federal Career Internship Program on June 8, 2009. At all times, he was employed as an auditor. Complainant suffers with Attention Deficit Hyperactivity Disorder (ADHD) and dyslexia. Both the ADHD and the dyslexia were diagnosed in his tender years. Upon hiring, Complainant attended a new employee orientation with the Agency. It was there that he initially notified the Agency of his disabilities. After a rocky seven month tenure, Complainant was terminated by the Agency in January, 2010.

During Complainant's employment with the Agency, two themes emerged: Complainant's workplace performance issues and Complainant's requests for disability accommodations. Because they are two separate issues, I will describe each of these separately, beginning with Complainant's workplace performance issues.

*Workplace Performance Issues*

Within a month of Complainant beginning employment with the Agency, work-related problems began to surface. Brian Johnson, Complainant's senior auditor, met with him on July 2nd. Complainant's immediate supervisor, Miguel Vallejo, was also there. The subject matter of this conversation was the areas where Complainant needed to improve. Specifically, Johnson and Complainant discussed being on time, Complainant's erratic work schedule, Complainant's inappropriate Internet usage at work, and honesty. Being on time was discussed because Complainant would come to work after 9:30.[1] Honesty was discussed because Vallejo was concerned that Complainant had not been honest with him regarding a work assignment from

---

[1] The Agency allows employees to come to work on a staggered schedule. An employee may choose to arrive at work as early as 6:30 AM or as late as 9:30 AM. Employees get 30 minutes for lunch. Regardless of the time the employee arrives to work, he/she is expected to work an 8 hour day. No employee is allowed to come to work after 9:30.

Kimberly Dixon. Johnson wrote up reflections of the meeting in an email and sent those to Complainant. Complainant responded with an acquiescence of sorts: "I concur; excellence is attained only when we push ourselves to our maximum potential, to do less allows mediocrity to take place."

Less than two weeks later, Complainant met with Johnson again, this time to go over Complainant's performance plan.

On August 10, Johnson sent Complainant an email noting that he was late for a training that began at 8:00 AM; Complainant arrived at 8:45.

Complainant met with Johnson again on September 25 for a performance counseling session. There, Complainant was given a rating of "a plus" on "Achieving Results" and "Thinking Critically." On "Collaborating with Others" and "Written and Oral Communication," Complainant was given a score of "needs improvement." Notations show that Complainant was "improving significantly" and had become more responsible in his working schedule, but that Complainant still struggled "a little with following orders."

Five days later, Complainant and Johnson met again, though under more serious circumstances. Prior to the meeting, Complainant reported to the IT department that he was having network connection problems with his computer. Complainant's computer was locked with both a fingerprint password and a manually entered password. When Complainant took his computer to IT, he was asked to unlock it, which he could not do. He put his left fingerprints on the unlock pad, but those did not work. The next day, IT personnel asked him to use his right fingerprints, which worked. After gaining access, IT learned that there was another password block on the computer that prevented the computer from connecting with the network. Complainant told Johnson and IT that he did not know how this password was put on the

3

computer. Complainant was then told to try passwords that he would regularly use; none of those worked. As he left the meeting, however, Complainant mentioned that he sometimes used a series of zeroes. Hearing this, Erica Harris, an IT employee, began trying a combination of several zeroes. Upon entering four zeroes, Harris gained access to the computer.

Needless to say, this caused alarm to Harris, particularly since her department was put into a rush mode due to Complainant's need to catch a work-related flight. Due to Complainant's dishonesty, her team spent three hours working on his computer, when the problem could have been solved in a matter of minutes (had Complainant been forthright from the beginning). In an email to Johnson, Harris verbalized these concerns, writing that Complainant had blatantly lied to her.

Due to the seriousness of this, Johnson arranged for Complainant's immediate supervisor, Vallejo, to be with him in the meeting with Complainant. During that meeting, Johnson explained to Complainant the importance of integrity and the appearance of integrity. Johnson also informed Complainant that integrity issues were grounds for termination.

Issues also arose regarding Complainant's approach to congressionally mandated audits. As Johnson explained to this Court, these audits are fairly standardized and must be consistent. In an effort to keep from reinventing the wheel, the Agency uses templates for the audits from year to year. This allows for the auditing employees to quickly put in information. Complainant, however, did not want to follow the templates, but wanted to make his own, which he did. This led to frustrations on Complainant's team, as Complainant seemed to confuse himself with his own templates.

4

Another issue arose regarding Complainant's working relationship with Kimberly Dixon. Dixon was the auditor in charge on one assignment that Complainant worked. Complainant would not follow Dixon's instructions.

Before December, Johnson considered removing Complainant from his assigned team. Even then, Johnson began to have concerns that Complainant's two year period would not work out. Throughout December, however, Vallejo became more concerned with Complainant's performance. Vallejo and Johnson began having daily meetings regarding Complainant's performance. Supervision of Complainant began to cause so much stress to Vallejo that he considered transferring to an open position at the Center for Disease Control. This seemed to be the definitive factor for Johnson and he decided to give Complainant an opportunity to resign or be fired.

On Thursday, January 21, 2010, Johnson summoned Complainant to his office. There, Johnson told Complainant that he believedthe probationary period was not working out. Johnson then gave Complainant a few days to think about resigning. Complainant was to return the following Monday, but called in sick. The following Thursday – January 28 – Complainant returned to the office. Johnson asked Complainant if he had thought about resigning. Before speaking further with Johnson, Complainant informed him that this was a hostile work environment and that he would not discuss anything with him until a witness was present. After rejecting several candidates for the witness position, Complainant settled on Constance Parks. After Parks entered the office, Johnson again asked Complainant if he was going to resign; Complainant answered that he would not. Upon hearing this, Johnson gave Complainant a termination letter. In the termination letter, Complainant was advised that his employment was

5

terminated due to his failure to collaborate with others, inability to effectively communicate, and his integrity issues.

*Disability Accommodations*

Upon hiring, Complainant informed the Agency of his disability (ADHD). Complainant asked his supervisor to have his tasks sent to him in writing through Microsoft Outlook. This was granted. In June, Complainant sent emails to Barbara Hehemann and Elizabeth Zyga, administrative officers within the Agency, requesting noise cancellation headphones. In July, Complainant emailed Johnson a variety of attachments documenting various tools Complainant ordered to accommodate his disability. These included a SoothSayer Word Prediction Software, Write: Out Loud Solo Edition, and a Tadi Phone Dialer/Address Book. Complainant ordered the noise cancellation headphones on July 30. In October, Complainant ordered a Zoomtext Magnifier. All of these accommodations were ordered through a Department of Defense Agency called the Computer Assistance Program (CAP) and Complainant received each of these accommodations. CAP denied Complainant one accommodation: a request for a large screen monitor. CAP denied this request because agencies typically provide monitors with magnifying capabilities. Upon learning that CAP denied the monitor, Complainant made a personal request for the monitor from Johnson. Johnson relied on CAP's reasoning to deny the monitor, but also noted that Complainant had not asserted any sort of vision disability.

Another issue arose regarding Complainant's use of recording devices. Complainant requested permission to use recording devices during interviews with auditees. Procedurally, the Agency frowns upon such actions as recording devices during interviews might intimidate the auditee. As such, Complainant's request for a recording device during interviews was denied.

6

Complainant was told by his superior that he should take notes during the interviews and then transcribe those after the interviews were over.

The Agency called two experts who both testified that Complainant needed only two accommodations as a result of his ADHD: assignments in writing and noise cancellation headphones.

### Denial of Evaluation

Another issue before this Court concerns the Agency's denial of a performance evaluation to Complainant. Agency supervisors are required to meet with employees twice during the year for formal evaluations. The end of the year evaluation is given to employees between January 1st and February 15th. Complainant was placed on a performance plan on June 9th. On September 25th, Complainant and Johnson discussed his performance plan and the areas he needed to improve.

At his termination meeting, Complainant requested a final performance evaluation, but Johnson was not finished drafting it. Johnson later finished the product by February 15th, but had a difficult time giving it to Complainant. Johnson attempted to contact Complainant by e-mail and phone, but his efforts were futile.

### EEO Activity

## II. PROCEDURAL HISTORY

## III. ANALYSIS

Complainant brings five causes of action to this Court: 1) discrimination on the basis of disability when he was denied a reasonable accommodation; 2) discrimination on the basis of disability when he was denied a performance evaluation; 3) unlawful termination on the basis of

disability; 4) hostile work environment (disability); and 5) unlawful termination on the basis of retaliation for prior EEO activity.

1.   *Reasonable Accommodation*

Complainant first alleges that the he was denied reasonable accommodations when the Agency refused to allow him to use recording devices during audit meetings and was denied the large screen monitor for his computer. To succeed on this claim, Complainant must show that (1) he is a person with a disability for purposes of the Rehabilitation Act; (2) that he is a qualified person with a disability; and (3) that he received an adverse employment action as a result of his disability. Schwartz v. USPS, Appeal No. 01956312 (January 5, 1998).

Based on the Record before me, I find that Complainant is a person with a disability as defined by the Rehabilitation Act. The Rehabilitation Act and the Americans with Disabilities Act define a person with a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, readings, concentrating, thinking, communicating, and working." 42 U.S.C. 12102(2)(A). ADHD is a mental impairment that impairs the major life activity of learning. Complainant has shown before this Court a long record of learning disabilities that resulted from his ADHD. As such, he is a person with a disability under the meaning of the Rehabilitation Act.

Complainant is also a qualified individual with a disability. In order to prove that he is a qualified individual with a disability, Complainant must show that he "satisfies the requisite skill, experience, education and other job-related requirements of the employment position…and, with or without reasonable accommodation, can perform the essential functions of such position.

8

29 C.F.R. 1630.2(m). Essential functions "means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. 1630.2(n).

The real issue in this analysis is whether the Complainant received an adverse action on the basis of his disability. Complainant asserts that the denial of the recorder during auditee interviews and the denial of the large screen monitor were both failures to accommodate. The Agency asserts that Complainant was not even entitled to those accommodations and points to the testimony of its two experts. I agree with the Agency's proposition. Assuming, however, that the accommodations were needed for the Complainant to perform his job, the claim still fails. First, the Complainant was not outright denied the use of the recorder; he was merely denied the use of the recorder during auditee interviews. Second, the Complainant did not show how a request for a large screen monitor was an accommodation for his disability. Not once has the Complainant asserted that his ADHD interferes with his vision. Moreover, the accommodation was denied because the computers were manufactured with the ability to create a larger text on the screen. Finally, as the Agency pointed out to this Court repeatedly, Complainant used technological devices[2] during the course of this two day hearing that were smaller or about the same size than the computer monitor he was provided by the Agency during his employment.

Regarding the recording device, even when assuming the refusal to use a recording device during auditee interviews equated a failure to accommodate Complainant's disability of ADHD, I find that the Agency has shown that such usage would impose upon it an undue burden. Once a complainant establishes a prima facie case of failure to accommodate, the burden is on the agency to show that it cannot provide reasonable accommodation for the employee's disability. An agency is not required to make accommodations that would constitute an undue hardship on its operations. Factors to consider in determining whether an accommodation would

---

[2] Complainant frequently used an Ipad throughout both days of this Hearing.

9

impose an undue hardship on the operations of the agency's program include: (1) the overall size of the agency's program with respect to the number of employees, number and type of facilities, and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.

The third prong is at issue here. While the cost of the accommodation is zero, the nature of the requested accommodation is high. During audits, the Agency wants auditees to open up and fears that a recording device would cause them to freeze. This is a legitimate concern. Moreover, Complainant was provided the opportunity to take notes using his laptop computer during these auditee interviews. Complainant certainly has no problem using technological devices to take such notes, as I saw him doing exactly that during the two days of these proceedings.

2. *Denial of Performance Evaluation*

Complainant next alleges that he was discriminated against on the basis of disability when he was denied a performance evaluation. Before going into the analysis, I must acknowledge that I have questions about whether this constitutes an adverse employment action. As the 7th Circuit has noted, "it is essential to distinguish between **material** differences and the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms and conditions." Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006) (emphasis added). At the outset, this Court questions the materiality of the denial of an evaluation as employment discrimination. However, even when ignoring those concerns and assuming that the denial of the evaluation constituted an adverse employment action, when analyzed using the factors from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Complainant's claim must fail. The Agency submitted to this Court

10

the legitimate, non-discriminatory reason that those evaluations were not due in their final form until February.[3] Complainant has submitted no evidence to show that the Agency's proffered reason was pretextual. As such, Complainant has not met his burden on this claim and the claim fails.

3. *Unlawful Termination on the Basis of Disability*

Complainant also brings an unlawful termination on the basis of disability claim. To prevail on this claim, Complainant must satisfy the burden articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, supra. Sotomayor v. Dept. of Agriculture, Appeal No. 0120102342 (January 18, 2012). Complainant must first show that he was a person with a disability. I have already concluded above that Complainant has met this burden. Next, he must show that he suffered an adverse action. It is undisputed that Complainant was terminated by the Agency in January, 2010. Termination is an adverse action. Having met these initial burdens, Complainant has raised the inference of discrimination.

Having raised the inference of discrimination, the burden of production now falls on the Agency to articulate a legitimate, non-discriminatory reason for taking the adverse action. In the termination letter to Complainant, the Agency informed Complainant that he was terminated due to his failure to collaborate with others, inability to effectively communicate, and his integrity issues. Before this Court, the Agency has submitted evidence demonstrating Complainant had difficulty collaborating with others, particularly regarding the audit templates and his overall disdain for Kimberly Dixon. The Agency has also proffered evidence regarding Complainant's inability to effectively communicate. Finally, the Agency submitted a great deal of evidence regarding Complainant's integrity issues, particularly regarding his computer issue.

---

[3]The Agency also showed a good faith effort to contact the Complainant to deliver the evaluation to him after his January termination. Complainant, however, would return neither phone calls nor emails.

Since the Agency met its burden of production, the burden of production fell back to Complainant to show that the Agency's proffered reasons for his termination were pretextual. Complainant has offered no evidence before this Court to show that the Agency's reasons for his termination were pretextual. Therefore, Complainant has not met his burden and this claim fails.

### 4. *Hostile Work Environment (Disability)*

Complainant next asserts a hostile work environment claim on the basis of disability. To establish a claim of hostile environment harassment, complainant must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. Baker v. Dept. of Veteran's Affairs, EEOC Appeal No. 0120102667 (November 30, 2010).

Complainant's hostile work environment claim fails. While Complainant has met the first prong of the analysis, his claim fails on the second and third prongs. Complainant has submitted no evidence before this Court showing, or even remotely allowing an inference, that the managers or fellow employees at the Agency subjected him to unwelcome verbal or physical harassment based on his statutorily protected class.

### 5. *Retaliation*

Next I will address the Complainant's claim that the Agency's actions were based on his prior EEO activity. To establish a prima facie case in regard to retaliation, the Complainant would have to show that he was engaged in prior protected EEO activity; number two, the

12

Agency was aware of the protected activity; and number three, he was subjected to adverse treatment and that there was a causal connection, *Simmons v. the Department of Justice*, EEOC request number 059506113 (1996).

Further, the Complainant must establish that the Agency's actions were meant to dissuade the Complainant from engaging in protected activity, *Burlington Northern and Santa Fe Railroad Company v. White*, 548 U.S. 53 (2006); *Ray v. Henderson*, 217 F.3d, 1234 (Ninth Circuit, 2000).

Complainant failed to put forth anything more than speculation that any of the Agency's actions were based on his EEO activity. Therefore this claim fails. Even assuming he could establish a prima facie case, the Agency has provided legitimate non-discriminatory reasons for its actions and Complainant has failed to show those reasons are a pretext to hide retaliatory animus. The analysis above establishes the Agency's reasons for its actions and the failure of Complainant to put forth any evidence to show the Agency's reasons are a pretext to hide discriminatory or retaliatory animus.

<u>NOTICE TO THE PARTIES</u>

### *TO THE AGENCY:*

Within forty days of receiving this decision and the hearing record, you are required to issue a final order notifying the Complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the Complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit, the right to request appointment of counsel and waiver of court

costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice or Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. §1614.403, and append a copy of your appeal to your final order. *See* EEO Management Directive 110 (EEO MD-110), November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. §1614.505.

### *TO THE COMPLAINANT:*

You may file an appeal with the Equal Employment Opportunity Commission's Office of Federal Operations when you receive a final order from the Agency informing you whether the Agency will or will not fully implement this decision. 29 C.F.R. §1614.110(a). From the time you receive the Agency's final order, you will have thirty (30) days to file an appeal. If the Agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the Agency's forty (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision to your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the Agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the Agency.

### *WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

<u>BY MAIL:</u>

14

Director, Office of Federal Operations

Equal Employment Opportunity Commission

P.O. Box 77960

Washington, D.C. 20013

BY PERSONAL DELIVERY:

Director, Office of Federal Operations

Equal Employment Opportunity Commission

131 M Street, NE, Suite 5SW12G

Washington, D.C. 20507

BY FACSIMILE:

Fax No. (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. §1614.504, a final action that has not been the subject of an appeal to the Commission or a civil action is binding on the Agency. If the complainant believes that the Agency has failed to comply with the terms of this decision, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If the Agency has not

15

responded to the Complainant in writing, or if the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action.  The complainant may file such an appeal thirty-five (35) calendar days after serving the Agency with the allegations of noncompliance, but must file an appeal within thirty (30) calendar days of receiving the Agency's determination.  A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

This 11th day of April , 2012.

LANA LAYTON

ADMINISTRATIVE JUDGE

16

# Certificate of Interested Persons & Corporate Disclosure

THEN Region IV (OIG/HHS/OS/OAS) United States Regional Inspector General for Audit Services, Peter J. Barbera





United States Department of
**Health & Human Services**

Leading America to Better Health, Safety and Well-Being

**HHS Employee Details**

| Last name | Conway |
|-----------|--------|
| First name | Alexis |
| Agency | OIG |
| Organization | HHS/OIG/OCIG |
| Job title | Senior Counsel |
| Phone | 202-205-3212 |
| Internet e-mail | Alexis.Conway@oig.hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Alexis S. Conway
Office of Counsel to the Inspector General
U.S. Department of Health & Human Services
Cohen Bldg. – Room 5527
330 Independence Ave., S.W.
Washington, D.C. 20201

Americans (citizens of the United States [of America]) with disability/disabilities [non-schedule A hire(s)/applicant(s)] qualified & competitively competing.

5



*United States Department of*
**Health & Human Services**

*Leading America to Better Health, Safety and Well-Being*

**HHS Employee Details**

| | |
|---|---|
| **Last name** | Drake |
| **First name** | John |
| **Middle name** | T |
| **Agency** | OIG |
| **Organization** | HHS/OIG/OAS |
| **Job title** | Supervisory Auditor |
| **Phone** | 404-562-7755 |
| **Fax** | 404-562-7795 |
| **Internet e-mail** | John.Drake@oig.hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Garfield Daley
Government Information Specialist
FOI/Privacy Acts Division
Office of Public Affairs

Susan Callahan

6



*United States Department of*
## Health & Human Services
*Leading America to Better Health, Safety and Well-Being*

**HHS Employee Details**

| | |
|---|---|
| **Last name** | Richardson-Crooks |
| **First name** | Cynthia |
| **Agency** | OS |
| **Organization** | EEOCO |
| **Job title** | Director EEOCO |
| **Duty station** | Washington DC |
| **Mail stop** | 200 Independence Avenue SW |
| **Phone** | (202) 690-6555 |
| **Fax** | (202) 690-6555 |
| **Internet e-mail** | Cynthia.Richardson-Crooks@hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Cynthia Richardson-Crooks, J.D., Director
EEO Compliance and Operations Division
Department of Health and Human Services
Mary E. Switzer Building
330 C St., SW, Suite 2200
Washington, DC 20201

EEO Compliance and Operations Division
Department of Health and Human Services
Mary E. Switzer Building
330 C St., SW, Suite 2200
Washington, DC 20201

Robert Eckert

7



*United States Department of*
**Health & Human Services**
Leading America to Better Health, Safety and Well-Being

**HHS Employee Details**

| Last name | Daley |
|---|---|
| First name | Garfield |
| Middle name | O |
| Agency | OS |
| Organization | HHS/OS/ASPA |
| Job title | Public Affairs Specialist |
| Room | 2208 |
| Duty station | Washington District of Columbia |
| Mail stop | 330 C Street SW Switzer BLDG |
| Phone | (202) 690-8055 |
| Internet e-mail | Garfield.Daley@hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Carlton M. Hadden, Director Office of Federal Operations within the U.S. EEOC

8



**United States Department of**
**Health & Human Services**
Leading America to Better Health, Safety and Well-Being

**HHS Employee Details**

| Last name | Harris |
|---|---|
| First name | Erica |
| Middle name | J |
| Agency | OIG |
| Organization | HHS/OIG/OMP |
| Job title | SUPV IT SPECIALIST |
| Phone | 404-562-7638 |
| Fax | 404-562-7656 |
| Internet e-mail | Erica.Harris@oig.hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the HHS directory contact list.*

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Erica Harris

Chief, Southeastern Support Center

DHHS OIG OMP/IT

61 Forsyth St., SW, Suite 5T18

Atlanta, GA  30303

erica.harris@oig.hhs.gov

voice (404) 562-7638

fax (404) 562-7656

9



*United States Department of*
Health & Human Services

Leading America to Better Health, Safety and Well-Being

**HHS Employee Details**

| Last name | Johnson |
|---|---|
| First name | Brian |
| Middle name | C |
| Agency | OIG |
| Organization | HHS/OIG/OAS |
| Job title | Audit Manager |
| Phone | 404-562-7788 |
| Fax | 404-562-7795 |
| Internet e-mail | Brian.Johnson@oig.hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Appellant THEN Office of Inspector General (OIG) Department of Health and Human Services (HHS), Office of the Secretary (OS), Office of Audit Services, Region IV, Information Technology Auditor Law-enforcement official, M. John Jones

Administrative Trial Judge Lana Layton
OFO EEOC

Lana Layton Administrative Trial Judge of the Equal Employment Opportunity Commission ATLANTA DISTRICT OFFICE disallowed

Hon. Lana Layton, EEOC Administrative Trial Judge Atlanta District Office
OFO EEOC


Sam Olens, Attorney General of Georgia
Office of the Attorney General
40 Capital Square, SW
Atlanta, GA 30334
Phone: 404 656-3300

10



United States Department of
Health & Human Services

Leading America to Better Health, Safety and Well-Being

**HHS Employee Details**

| Last name | White |
|---|---|
| First name | Bonita |
| Middle name | V. |
| Agency | OS |
| Organization | OS/ASA/OHR |
| Job title | Director Diversity & Inclusion Division |
| Room | Suite 1318 Room |
| Duty station | Washington DC |
| Mail stop | 330 C Street SW |
| Phone | (202) 690-6674 |
| Fax | (202) 690-6758 |
| Internet e-mail | Bonita.White@HHS.GOV |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Bonita V. White, Director
Department of Health and Human Services
Hubert H. Humphrey Bldg., Room 347-F
200 Independence Avenue, SW
Washington, DC 20201

THEN Agency HHS EEO Director & Office of the Secretary EEO Compliance Division Director, and also Acting Office of Diversity Management & EEO (ODME) Director, Bonita V. White, NOW

11



United States Department of
# Health & Human Services
**Leading America to Better Health, Safety and Well-Being**

**HHS Employee Details**

| | |
|---|---|
| **Last name** | Wilson |
| **First name** | Reynolds |
| **Middle name** | R |
| **Agency** | OIG |
| **Organization** | HHS/OIG/OCIG |
| **Job title** | Deputy Branch Chief Advice |
| **Phone** | 202-205-9212 |
| **Fax** | 202-205-9758 |
| **Internet e-mail** | Reynolds.Wilson@oig.hhs.gov |

Browse Organizations | Search employees | Customize

Directory services provided by Program Support Center
*To make corrections, see the* HHS directory contact list.

HHS Home | Questions? | Contact Us | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services • 200 Independence Avenue, S.W. • Washington, D.C. 20201

Reynolds Wilson, Senior Counsel
Office of Counsel to the Inspector General
Department of Health and Human Services
330 Independence Avenue, SW
Room 5527, Cohen Building
Washington, DC  20201

12

# ANTHEM, INC.

(Exact name of registrant as specified in its charter)

**Indiana**
(State or other jurisdiction
of incorporation)

**001-16751**
(Commission
File Number)

**35-2145715**
(IRS Employer
Identification No.)

**120 Monument Circle**
**Indianapolis, IN 46204**
(Address of principal executive offices) (Zip Code)

Registrant's telephone number, including area code: (317) 488-6000



# ANTHEM, INC.

(Exact name of registrant as specified in its charter)

**Indiana**
(State or other jurisdiction
of incorporation)

**001-16751**
(Commission
File Number)

**35-2145715**
(IRS Employer
Identification No.)

**120 Monument Circle**
**Indianapolis, IN 46204**
(Address of principal executive offices) (Zip Code)

Registrant's telephone number, including area code: (317) 488-6000

13



# Apple Inc.

(Exact name of Registrant as specified in its charter)

**California**
(State or other jurisdiction
of incorporation)

**001-36743**
(Commission
File Number)

**94-2404110**
(IRS. Employer
Identification No.)

**1 Infinite Loop
Cupertino, California 95014**
(Address of principal executive offices) (Zip Code)

**(408) 996-1010**
(Registrant's telephone number, including area code)

# Deloitte

Company · deloitte.com

Deloitte Touche Tohmatsu Limited /dəˈlɔɪt ˈtuːʃ touˈmɑːtsuː/, commonly referred to as Deloitte, is a multinational professional services firm headquartered in New York City in the United States. Wikipedia



**CEO:** Punit Renjen

**Headquarters:** New York City, NY

**Revenue:** 35.2 billion USD (2015)

**Founder:** William Welch Deloitte

**Founded:** 1845, London, United Kingdom

# Ernst & Young

Company · ey.com

Ernst & Young is a multinational professional services firm headquartered in London, United Kingdom. Wikipedia



**CEO:** Mark Weinberger

**Headquarters:** London, United Kingdom

**Revenue:** 28.7 billion USD (2015)

**Founder:** Arthur Young

**Founded:** 1849, England, United Kingdom

Federal Reserve Bank of Atlanta
1000 Peachtree St NE, Atlanta GA 30309

# Fulton County Board of Commissioners



Chairman John H. Eaves
District 7, At-Large

Vice Chairman Liz Hausmann
District 1

Bob Ellis
District 2

Lee Morris
District 3

Joan P. Garner
District 4

Marvin S. Arrington, Jr.
District 5

Emma I. Darnell
District 6

Fulton County Board of Commissioners <of the State of Georgia
141 Pryor Street SW, 10th floor
Atlanta, GA 30303
Phone: 404-612-8200

16

# KPMG

Company · kpmg.com



KPMG is a professional service company, being one of the Big Four auditors, along with Deloitte, EY and PwC. Seated in Amsterdam, the Netherlands, KPMG employs 174,000 people and has three lines of services: audit, tax, and advisory. Wikipedia

**Headquarters:** Amstelveen, Netherlands

**Revenue:** 24.44 billion USD (2015)

**Customer service:** 1 (866) 246-9224

**Founded:** 1987

**Founders:** Klynveld Main Goerdeler, Marwick Mitchell & Co., Klynveld Kraayenhof & Co., William Barclay Peat & Co.

## INTERNATIONAL BUSINESS MACHINES CORPORATION

(Exact name of registrant as specified in its charter)

| New York | 1-2360 | 13-0871985 |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (IRS employer Identification No.) |

ARMONK, NEW YORK
(Address of principal executive offices)

10504
(Zip Code)

914-499-1900
(Registrant's telephone number)

MSPB

Commission File Number: 0-14278

# MICROSOFT CORPORATION

(Exact name of registrant as specified in its charter)

| Washington | 91-1144442 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| One Microsoft Way, Redmond, Washington | 98052-6399 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

(425) 882-8080
(Registrant's telephone number, including area code)



**U.S. MERIT SYSTEMS PROTECTION BOARD**

## MSPB Jurisdiction



18



# PricewaterhouseCoopers

pwc.com

PricewaterhouseCoopers is a multinational professional services network. It is the largest professional services firm in the world, and is one of the Big Four auditors, along with Deloitte, EY and KPMG. Wikipedia

**Headquarters:** New York City, NY

**Revenue:** 35.4 billion USD (2015)

**Founded:** 1998

**Acquisition date:** 2002

19



The Rothschild Group

Rothschild is one of the world's largest independent financial advisory groups, employing approximately 2,800 people in 40 countries around the world.

Abu Dhabi  Athens  Auckland  Barcelona  Beijing  Birmingham  Brussels  Budapest  Bucharest  Doha  Dubai  Frankfurt  Geneva  Guernsey  Hanoi  Hong Kong  Istanbul  Jakarta  Johannesburg  Kiev  Kuala Lumpur  Leeds  Lisbon  London  Los Angeles  Luxembourg  Madrid  Manchester  Manila  Melbourne  Mexico City  Milan  Moscow  Mumbai  New York  Paris  Prague  Reno  Riga  Santiago  São Paulo  Seoul  Shanghai  Singapore  Sofia  Stockholm  Sydney  Tallinn  Tel Aviv  Tokyo  Toronto  Vilnius  Warsaw  Washington  Wellington  Zurich

- 
- **Rothschild**
- Level 21
- No. 120 Collins Street
- Melbourne 3000
- Australia
- Tel: +61 3 9656 4600
- Fax: +61 3 9656 4700

Global Financial Advisory

- 
- **Rothschild**
- Level 41
- 50 Bridge Street
- Sydney
- New South Wales 2000
- Australia
- Tel: +61 2 9323 2000
- Fax: +61 2 9323 2040

Global Financial Advisory

- 
- **Rothschild Belgique**
- Succursale de Rothschild et Cie Banque

20

- Avenue Louise, 166
- 1050 Bruxelles
- Belgium
- Tel: + 32 (0) 2 627 77 30
- Fax: + 32 (0) 2 627 77 59
- Wealth Management
-
- **Rothschild**
- Av. Brigadeiro Faira Lima
- 2055/183
- São Paulo
- SP01451-000
- Brazil
- Tel: +55 11 3039 5828
- Fax: +55 21 3039 5826
- Global Financial Advisory
-
- **Rothschild**
- Bulgaria
- Global Financial Advisory
- Our Sofia team is contactable through London or Paris.
-
- **Rothschild**
- Brookfield Place
- TD Canada Trust Tower
- 161 Bay Street, Suite 4230
- Toronto
- Ontario M5J 2S1
- Canada
- Tel: +1 416 369 9600
- Fax: +1 416 864 1261
- Global Financial Advisory
-
- **Rothschild Trust**
- 15 Queen Street
- Charlottetown
- Prince Edward Island
- CIA 7K7
- Canada
- Tel: + 41 44 384 7111
- Trust
-
- **Rothschild Bank (CI) Limited**
- St. Julian's Court, St Julian's Avenue
- St. Peter Port
- Guernsey GY1 3BP
- Channel Islands
- Tel: +44 1481 705191
- Fax: +44 1481 711272

21

- Wealth Management
-
- **Rothschild Bank International Limited**
- St. Julian's Court
- St. Peter Port
- Guernsey GY1 3BP
- Channel Islands
- Tel: +44 1481 713713
- Fax: +44 1481 705000 Lost or stolen Rothschild Visa Card
- Banking
-
- **Rothschild Trust Guernsey Ltd**
- P.O. Box 472
- St. Julian's Court
- St. Julian's Avenue
- St Peter Port
- Guernsey GY1 6AX
- Channel Islands
- Tel: +44 1481 713713
- Fax: +44 1481 712686
- Trust
-
- **Rothschild**
- ChileGlobal Financial Advisory
- Our Santiago team is contactable through São Paulo.
-
- **Rothschild**
- Czech RepublicGlobal Financial Advisory
- Our Prague team is contactable through London or Paris.
-
- **Rothschild**
- 23Bis Avenue de Messine
- 75008 Paris
- France
- Tel: +33 1 40 74 40 74
- Fax: +33 1 40 74 98 01
- Global Financial Advisory
- Institutional Asset Management
- Wealth Management
-
- **Rothschild Merchant Banking**
- 23Bis, Avenue de Messine
- Paris 75008
- France
- Tel: + 33 1 40 74 40 74
- Merchant Banking
-
- **Rothschild Patrimoine**
- 29, avenue de Messine

22

- 75008 Paris
- France
- Tel: + 33 1 40 74 40 74
- Fax: + 33 1 40 74 98 01
- Wealth Management
-
- **Rothschild**
- Börsenstraße 2 - 4
- 60313 - Frankfurt am Main
- Germany
- Tel: +49 69 299 8840
- Fax: +49 69 287 820
- Global Financial Advisory
-
- **Rothschild**
- Börsenstraße 2 - 4
- 60313 - Frankfurt am Main
- Germany
- Tel: + 49 69 40 80 26 0
- Fax: + 49 69 40 80 26 55
- Wealth Management
-
- **Transaction R**
- Börsenstraße 2 - 4
- 60313 - Frankfurt am Main
- Germany
- Tel: +49 69 299 884 115
- Global Financial Advisory
-
- **Rothschild**
- Ploutarchou Str 2
- Athens
- 10676
- Greece
- Tel: +30 (210) 720 9520
- Fax: +30 (210) 721 4819
- Global Financial Advisory
-
- **Rothschild**
- HungaryOur Budapest team is contactable through London or Paris.
-
- **Rothschild**
- 103 1st Floor Piramal Towers Peninsula Corp. Park
- Ganpatrao Kadam Marg
- Lower Parel Mumbai - 400 013
- India
- Tel: +91 22 4081 7000
- Fax: +91 22 4081 7001
- Global Financial Advisory

23

- 
- **PT Rothschild Indonesia**
- Indonesia Stock Exchange Building
- Tower 1, Level 17
- Sudirman Central Business District
- Jl. Jend. Sudirman Kav. 52-53
- Jakarta 12190
- Indonesia
- Tel: +62 21 2922 0900Global
- Financial Advisory
- 
- **Rothschild**
- 32 Rothschild Blvd
- Tel - Aviv 66882
- Israel
- Tel: +972 72 220 4100
- Fax: +972 72 220 4106
- Global Financial Advisory
- 
- **Rothschild**
- Via Agnello 5
- 20121 Milano
- Italy
- Tel: +39 02 7244 31
- Trust
- 
- **Rothschild**
- Via Agnello 5
- 20121 Milano
- Italy
- Tel: +39 02 4537 0955
- Wealth Management
- 
- **Rothschild**
- Via Santa Radegonda 8
- 20121 Milano
- Italy
- Tel: +39 02 7244 31
- Fax: +39 02 7244 3310
- Global Financial Advisory
- 
- **Rothschild Japan-Global Advisory Japan**
- Kamiyacho MT Building
- Level 20, 4-3-20 Toranomon
- Minato-ku
- Tokyo 105-0001
- Japan
- Tel: +81 (0)3 6450 1200
- Global Financial Advisory

24

- 
- **Rothschild**
- Kamiyacho MT Building
- Level 20, 4-3-20 Toranomon
- Minato-ku
- Tokyo 105-0001
- Japan
- Tel: +81 (0)3 6450 1200
- Trust
- Wealth Management
- 
- **Rothschild**
- KoreaGlobal Financial Advisory
- Our Seoul team is contactable through Hong Kong.
- **Five Arrows Managers SA / PO Participations**
- 1, Place d'Armes
- L-1136 Luxembourg
- Luxembourg
- Tel: + 352 27 49 721
- Merchant Banking
- 
- **Rothschild Malaysia Sdn Bhd**
- 28-12, Level 28, Q Sentral
- Jalan Stesen Sentral
- Kuala Lumpur Sentral
- 50470 Kuala Lumpur
- Malaysia
- Tel: +603 2303 3688
- Global Financial Advisory
- 
- **Rothschild**
- SA de CV
- Campos Eliseos, 345 - 8° piso
- Polanco 11550
- Mexico D.F
- Mexico
- Tel: +5255 5327 1450
- Fax: +5255 5327 1485
- Global Financial Advisory
- 
- **Rothschild**
- New Zealand
- Global Financial Advisory
- Our Auckland and Wellington teams are contactable through Sydney.
- 
- **Rothschild Trust**
- Level 3
- 18 Stanley Street
- Auckland Central

25

- Auckland 1010
- New Zealand
- Tel: + 64 9 307 3950
- Fax: + 64 9 366 1482
- Trust
- 
- **Rothschild**
- Room 912A Winland International Finance Center
- No.7 Finance Street, Xicheng District
- 100033, Beijing
- People's Republic of China
- Tel: +86 10 6321 2900
- Fax: +86 10 6655 5880
- Global Financial Advisory
- 
- **Rothschild**
- 16/F Alexandra House
- 18 Chater Road
- Central Hong Kong SAR
- People's Republic of China
- Tel: +852 2525 5333
- Fax: +852 2868 1680
- Global Financial Advisory
- 
- **Rothschild**
- 16/F Alexandra House
- 18 Chater Road
- Central Hong Kong SAR
- People's Republic of China
- Tel: +852 2525 6300
- Fax: +852 2868 1680
- Trust
- Wealth Management
- 
- **Rothschild**
- Suite 3207-09
- Tower Two Plaza 66
- No.1266 Nanjing XiLu
- 200040 Shanghai
- People's Republic of China
- Tel: +86 21 2203 8000
- Fax: +86 21 2203 8001
- Global Financial Advisory
- 
- **Rothschild**
- Phillippines
- Global Financial Advisory
- Our Manila team is contactable through Singapore.
-

- **Rothschild**
- Warsaw Financial Centre
- Emilii Plater 53
- 00-113 Warsaw
- Poland
- Tel: +48 22 540 6400
- Fax: +48 22 540 6402
- Global Financial Advisory
-
- **Rothschild**
- Calçada do Marquês de Abrantes,
- 40 - 1º Esq.
- 1200-719 Lisboa
- Portugal
- Tel: +351 21 397 5378
- Fax: +351 21 397 5476
- Global Financial Advisory
-
- **Rothschild**
- Al Fardan Office Tower
- Office 923 / 924
- Doha 31316
- Qatar
- Tel: +974 44101680
- Fax: +974 44101500
- Global Financial Advisory
-
- **Rothschild**
- RomaniaGlobal
- Financial Advisory
-         Our Bucharest team is contactable through London or Paris.
-
- **Rothschild**
- Novinsky Passazh (8th floor)
- 31 Novinsky Boulevard
- 123242 Moscow
- Russia
- Tel: +7 495 775 8221
- Fax: +7 495 775 8222
- Global Financial Advisory
-
- **Rothschild**
- One Raffles Quay
- North Tower #10-02
- 1 Raffles Quay #10-02
- Singapore 048583
- Singapore
- Tel: + 65 6535 8311
- Fax: + 65 6535 9109

27

- Global Financial Advisory
- 
- **Rothschild Trust (Singapore) Limited**
- One Raffles Quay
- North Tower
- 1 Raffles Quay #10-02
- Singapore 048583
- Singapore
- Tel: + 65 6532 0866
- Fax: + 65 6532 4166
- Trust
- 
- **Rothschild Wealth Management (Singapore) Limited**
- One Raffles Quay
- North Tower
- 1 Raffles Quay #10-02
- Singapore 048583
- Singapore
- Tel: + 65 6532 0866
- Fax: + 65 6532 4166
- Wealth Management
- 
- **Data Protection Officer**
- Rothschild (Singapore) Limited
- One Raffles Quay, North Tower
- 1 Raffles Quay #10-02
- 048583
- Singapore
- Tel: + 65 6535 8311
- 
- Global Financial Advisory
- Personal Data Protection Statement
- 
- **Data Protection Officer**
- Rothschild Trust (Singapore) Limited
- One Raffles Quay, North Tower
- 1 Raffles Quay #10-02
- 048583
- Singapore
- Tel: + 65 6531 1421
- 
- Trust
- Personal Data Protection Statement
- **Data Protection Officer**
- Rothschild Wealth Management (Singapore) Limited
- One Raffles Quay, North Tower
- 1 Raffles Quay #10-02
- 048583
- Singapore

28

- Tel: + 65 6532 0866
- 
- Wealth Management
-     Personal Data Protection Statement
- 
- **Rothschild**
- 3rd Floor
- Oxford Corner
- 32A Jellicoe Avenue West
- Rosebank
- Johannesburg 2196
- South Africa
- Tel: +27 11 428 3700
- Global Financial Advisory
- 
- **Rothschild**
- Paseo de la Castellana
- 35 - 3° 28046
- Madrid
- Spain
- Tel: +34 91 702 2600
- Fax: +34 91 702 2531
- Global Financial Advisory
- 
- **Rothschild**
- C/ Canàries, 23
- 08017 Barcelona
- Spain
- Tel: +34 93 254 75 03
- Fax: +34 93 254 75 04
- Global Financial Advisory
- 
- **Rothschild**
- Hovslagargatan 5B
- SE-111 48 Stockholm
- Sweden
- Tel: +46 8586 335 90
- Fax: +46 8660 97 91
- Global Financial Advisory
- 
- **Equitas SA**
- Rue du Commerce 3
- 1204 Geneva
- Switzerland
- Tel: +41 22 818 59 00
- Fax: +41 22 818 59 01
- Wealth Management
- 
- **Rothschild Bank AG**

29

- Zollikerstrasse 181
- 8034 Zurich
- Switzerland
- Tel: +41 44 384 7111
- Fax: +41 44 384 7222
- Wealth Management
- 
- **Rothschild Trust (Schweiz) AG**
- Zollikerstrasse 181
- 8034 Zurich
- Switzerland
- Tel: +41 44 384 7111
- Fax: +41 44 384 7201
- Trust
- 
- **RTS Geneva SA**
- Rue du Commerce 3
- 1204 Geneva
- Switzerland
- Tel: + 41 22 818 59 65
- Fax: + 41 22 818 59 02
- Trust
- 
- **Transaction R**
- 23bis Avenue de Messine
- Paris 75008
- France
- Tel: +33 1 40 74 43 66Global Financial Advisory
- 
- **Rothschild**
- Akmerkez Rezidans No 14 D:2
- Akmerkez Is Merkezi Yani
- Nispetiye Caddesi
- 34340 Etiler
- Istanbul
- Turkey
- Tel: +90 212 371 08 00
- Global Financial Advisory
- 
- **Rothschild**
- Al Bateen Area, Al Bainunah Street
- Al Bateen Tower
- 8th floor, C801
- P.o.box 32195
- Abu Dhabi W35
- UAE
- Tel: +971 (0)2-4030700
- Fax: +971 (0)2-6679602
- Global Financial Advisory

30

- 
- **Rothschild**
- Office 203, Level 2
- Burj Daman, DIFC
- PO Box 506570
- Dubai
- United Arab Emirates
- Tel: +9714 4284300
- Fax: +9714 3653183
- Global Financial Advisory
- 
- **Rothschild**
- UkraineGlobal Financial Advisory
- Our Kiev team is contactable through London or Paris.
- **Rothschild (Birmingham)**
- 67 Temple Row
- Birmingham B2 5LS
- United Kingdom
- Tel: +44 121 600 5252
- Fax: +44 121 643 7324
- Global Financial Advisory
- 
- **Rothschild (Leeds)**
- One Park Row
- Leeds LS1 5NR
- United Kingdom
- Tel: +44 113 200 1900
- Fax: +44 113 243 3039
- Global Financial Advisory
- 
- **Rothschild (London)**
- New Court
- St Swithin's Lane
- London EC4N 8AL
- United Kingdom
- Tel: +44 20 7280 5000
- Fax: +44 20 7929 1643
- Banking
- Global Financial Advisory
- Merchant Banking
- The Rothschild Archive
- 
- **Rothschild (Manchester)**
- 82 King Street
- Manchester M2 4WQ
- United Kingdom
- Tel: +44 161 827 3800
- Fax: +44 161 833 0293
- Global Financial Advisory

31

- 
- **Rothschild (Wilmslow)**
- The Coach House
- Fulshaw Hall
- Alderley Road
- Wilmslow
- Cheshire SK9 1RL
- United Kingdom
- Tel: +44 1625 416470
- Banking
- 
- **Rothschild Trust**
- New Court
- St Swithin's Lane
- London, EC4N 8AL
- United Kingdom
- Tel: + 44 20 7280 5000
- Fax: + 44 20 7929 5239
- Trust
- 
- **Rothschild Wealth Management (UK) Ltd**
- New Court
- St Swithin's Lane
- London, London EC4N 8AL
- United Kingdom
- Tel: + 44 20 7280 5000
- Fax: + 44 20 7280 5560
- Wealth Management
- 
- **Rothschild**
- 10100 Santa Monica Blvd
- Suite 1250
- Los Angeles CA 90067
- USA
- Tel: +1 310 432 4310
- Global Financial Advisory
- 
- **Rothschild Trust North America LLC**
- 100 W Liberty St, 12th floor
- Reno, NV 89501
- USA
- Tel: +1 775 398 7403
- Trust
- 
- **Rothschild**
- 1251 Avenue of the Americas
- 33rd floor
- New York
- NY 10020

32

- USA
- Tel: +1 212 403 3500
- Fax: +1 212 403 3501
- Global Financial Advisory
- Institutional Asset Management
-
- 1050 Connecticut Avenue NW
- Suite 1090
- Washington
- DC 20036
- USA
- Tel: +1 202 862 1660
- Fax: +1 202 862 1699
- Global Financial Advisory
-
- **Rothschild**
- Suite 204
- Central Building
- 31 Hai Ba Trung Street
- Hanoi
- Vietnam
- Tel: -
- Global Financial Advisory
- Our Hanoi team is contactable through Singapore.

33



**ROTHSCHILD**

**Global Financial Advisory**
Leading in financial advice, worldwide

| Who we are | Our services | Our clients | Our expertise | Our offices |

Search

Rothschild has an unparalleled number and breadth of advisers and offices worldwide. Use your mouse on the world map or the links below to select a regional Global Financial Advisory office.

Abu Dhabi  Athens  Auckland  Barcelona  Beijing  Birmingham  Bucharest  Budapest  Calgary  Doha  Dubai  Frankfurt  Hanoi  Hong Kong  Istanbul  Jakarta  Johannesburg  Kiev  Kuala Lumpur  Leeds  Lisbon  London  Los Angeles  Madrid  Manchester  Manila  Melbourne  Mexico City  Milan  Moscow  Mumbai  New York  Paris  Prague  Riga  Santiago  São Paulo  Seoul  Shanghai  Singapore  Sofia  Stockholm  Sydney  Tallinn  Tel Aviv  Tokyo  Toronto  Vilnius  Warsaw  Washington  Wellington

**Shire**

300 Shire Way
Lexington, MA 02421
USA
Tel: +1 617 349 0200

**Shire International GmbH**

Zählerweg 10
6300 Zug
Tel: +41 0 41 288 40 00
Fax: +41 0 41 288 40 01

**General Contact Information**

**Registered Office**

Shire plc
No. 99854
22 Grenville Street
St Helier
Jersey JE4 8PX

**Correspondence Address**

5 Riverwalk
Citywest Business Campus
Dublin 24
Ireland

**Investor Correspondence- UK**

Unity Place
Hampshire International Business Park
Basingstoke
RG24 8EP
United Kingdom

**Investor Correspondence- US**

300 Shire Way
Lexington
MA 02421
USA

34

# UF|UNIVERSITY *of* FLORIDA

   

University of Florida
Gainesville, FL 32611
(352) 392-3261

# Statement Regarding Oral Argument

The Appellant submits that oral argument would be helpful since the administrative trial Judge of the Equal Employment Opportunity Commission OFO disallowed THEN Region IV (OIG/HHS/OS/OAS) Regional Inspector General for Audit Services, Peter J. Barbera from testifying as to vitiate his Bivens claims of 42 U.S.C. § 1983 and the decision process would be significantly aided by its allowance.  This request is made pursuant to Fed R. App. 34(c) and 11th Cir. R. 28-2(c).

36

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.........

Statement Regarding Oral Argument..............................................................

Table of Citations ...............................................................................xliii

Statement of Subject Matter and Appellate Jurisdiction ..........................45

Statement of the Issues................................................................................55

Statement of the Case.................................................................................153

Statement of Facts......................................................................................166

Statement of Related Cases and Proceedings
Statement of the Standard or Scope of Review........................................509

Summary of the Argument.........................................................................552

Argument: ..................................................................................................556

   I. DEPRIVAL OF THAT WHICH IS FUNDAMENTAL AND INDISPENSABLE TO ONE'S ABILITY TO REDRESS AND HAVE CURED INJUSTICE—COMPLAINTS' OF DISCRIMINATION & RETALIATION; INJURES ONE'S RIGHT OF ACCESS TO JUSTICE—DENIES 'DUE PROCESS' ............556

     A. HHS Office of Secretary EEO official(s) intentional vitiation of notice of right to appeal its federal executive agency action and/or dismissal of complaint of Prohibited Personnel Practices (PPP)'s to either MSPB or EEOC; or petition a federal court, endangers my enumerated "Bill of Rights" guaranteed by the republic for which it stands one nation under God, with liberty and justice for ALL... {TIME & PLACE: WORLD WAR III, the "Constitution of the United States" is the Law of the Land herein the United States [of America]} ............556

     B. Malice fragmentation of claims requires the Right-remedy gap in constitutional law 42 U.S.C. §§ 1981-1987; "this point is dispositive of the issue to reverse/vacate Equal Employment Opportunity Commission Atlanta District Office Administrative Trial Judge, Hon. Lana Layton's 11[th] of April 2012 decision, and investigate ALL Appellant's claims {THAT WERE AND/OR ARE STILL ARE FRAGMENTED (see agency EEO Compliant(s): HHS-OS-0013-2010; HHS-OS-0034-2010), both filed timely, [however, the latter also being of the realm of MSPB was vitiated by the Agency's OS EEO

Compliance Office]  and so we do not have to consider the other interesting issues/questions presented and arguments made" .........................................556

C.   Malice fragmentation of cliams requires the Right-remedy gap in consistiutional law 42 U.S.C. §§ 1981-1987 this point is dispositive of the issue to reverse/vacate Equal Employment Opportunity Commission Atlanta District Administrative Trial Judge Lana Layton's 11th of April 2012 decision, and investigate ALL Appellant's claims {THAT WERE AND/OR ARE STILL ARE FRAGMENTED (see agency EEO Compliant(s): HHS-OS-0013-2010; HHS-OS-0034-2010) <both filled timely>, <however, the latter, a being a MSPB viatiated by the Agency's OS EEO Complaince Office }.......................557

D.   The Appellant made timely motion for class certification under EEOC administrative magistrate rules 29 C.F.R. § 1614.204(b) and Fed. R. Civ. P. Rule 23 during  2nd day of EEOC Hearing  No. 410-2011-00227X Agency EEO Complaint No. HHS-OS-0013-2010; "I'm not certifying this case as a class case" is the bench ruling of Hon. Lana Layton, U.S. EEOC Atlanta District Office administrative trial judge, on this determination, however, Fed. R. Civ. P. Rule 23(f) substantive due process right to appeal such determination is deprived when no order of decree from Hon. Lana Layton exist either granting or denying class action certification; in violation of Fed. R. Civ. P. Rule 23(c)(1)(A). "Fed. R. Civ. P. 23(f) is clear and unambiguous as to its application.  Only those orders granting or denying class certification may be pursued in the appellate courts immediately." 557

E.   Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred... IF the HHS/OS/EEO did not include in 'Record Of Investigation' (ROI),... the full performance appraisal/evaluation that indicate(s) that a Merit System Protection Board violation by OIG/DHHS/OS management, specifically by, THEN Region IV (HHS/OIG/OS/OAS) Regional Inspector General for Audit Services, Peter J. Barbera, and, Region IV (HHS/OIG/OS/OAS) Advanced Audit Technique Specialist & Information Technology Audit Manager, Brian C. Johnson, has/had occurred,...  how has not a conspiracy to discriminate between the Agency's OS/EEO compliance unit and the Agency's OIG Management within the Agency's OS ...occurred against Americans with disability/disabilities, when taken in-together with the Agency's OS non-compliance with the No FEAR Act web-posting requirement(s), that which, invalidates the No FEAR Act record(s) kept by the United States EEOC OFO,... occurred.... ALL of which is in violation of 42 U.S.C. § 1985; 42 U.S.C. §§ 2000ff-6, 2000ff-4; 5 U.S.C. § 2302(b)... that must certify issues

into questions, if permissible by the Law to the Supreme Court of the United States? ............................................................................................557

F.  SuConstructive Discharge/Forced To Resignb-point aaaa ......................558

G.  Sub-point dddd ..........................................................................................558

II.  EQUAL PROTECTION CLAUSE ='s EQUAL PROTECTION OF THE LAWS OF THE LAND [14TH AMENDMENT (1868)] ...........................................................558

A.  Title VII, of the 1964 Civil Rights Act, protect against pattern and practice discrimination, that which, would include a pattern and practice of disability employment discrimination occurring by the United States Department of Health and Human Services Agency's Office of Secretary [against Americans with disability/disabilities]. ............................................558

B.  The Agency has NOT and CANNOT point to the so-called interigty rule Pre-Employment Inquiries and Medical Questions & Examinations ............558

C.  Pre-Employment Inquiries and Medical Questions & Examinations SubDDD-point 2 ...............................................................................................558

D.  **The Agency has NOT and CANNOT point to the so-called interigty rule  the Appellant THEN Office of Inspector General (OIG) Department of Health and Human Services (HHS), Office of the Secretary (OS), Office of Audit Services, Region IV, Information Technology Auditor Law-enforcement official, M. John Jones violated/broken  … … ,however, I have in this credo pointed out the  integrity GAO Yellow book …<<point to the rule>> that Kimberly  Dixon Has broken … against the trust of the American people…WHAT WORKPLACE RULES HAVE THE APPELLANT BROKEN…? THUS FAR, THE AGENCY'S ARGUMENT IS "THERE ARE THINGS WE KNOW THAT WE KNOW. THERE ARE KNOWN UNKNOWNS. THAT IS TO SAY THERE ARE THINGS THAT WE NOW KNOW WE DON'T KNOW, BUT THERE ARE ALSO UNKNOWN UNKNOWNS. THERE ARE THINGS WE DO NOT KNOW WE DON'T [KNOW]!"** .........................................558

III. I AM THE LAW OF THE LAND; AND THE LAND OF LAW: IS LAW; [42 U.S.C. §§ 1981-1987] IF NO PERSON SHALL BE DEVPIVED OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW [[5TH AMENDMENT (1791)] & 14th AMENDMENT EQUAL PROTECTION CLAUSE = EQUAL PROTECTION(S) UNDER THE LAND OF LAW (1868)] ......................................................................559

A.  **The Office of Inspector General for the Department of Health and Human Services STILL has not facilitated the Appellant THEN Complainant, Region IV (OIG/DHHS/OS/OAS) Information Technology Auditor, M. John Jones's, FAR 39.2 compliant, approved reasonable Electronic Information & Technology (EIT) accommodations/workplace modifications purchased by the Department of Defence Computer-electronics Accommodation Program (DoD/CAP) that the Law [29 U.S.C. § 794d; 42 U.S.C. § 1982; and E.O. 13164] require MUST be facilitated, when the Agency has provided no undue burden exception certificate**

[under 36 CFR Part 1194.4 and FAR 39.204(e) ] signed by either OIG or the Agency's Office of the Secretary 508 official that would exempt the Appellant's Manager and/or the Appellant's Supervisor, both, OIG law enforcement audit agents, from not complying with 36 CFR Part 1194.3(c) electronic and information technology accessibility standards.
559

B.   No person should be subjugated to, or, subjected to a status quo merely because of the characteristics of having a disability without giving first, that individual an equal opportunity Because Section 508 [29 U.S.C. § 794d] requires federal agencies to ensure that the EIT they develop, procure, maintain, or use is accessible to and usable by individuals with disabilities requiring such reasonable Electronic Information Technology accommodation(s)/Workplace modification(s)… who are employees! Agency CANNOT negate its failure obligating its Agency to instal ertification from this appellant tribunal in accordance with 28 U.S.C. § 1254(2) is [hereby] sought. From February 16, 2010 until December 12, 2012 the Appellate's complaints [HHS-OS-0013-2010 & HHS-OS-0034-2010] have been fragmented and will or should be given at least that amount of time to write or submit a brief and evidencey ........................ 559
C.   Because Section 508 requires federal agencies to ensure that the EIT they develop, procure, maintain, or use is accessible to and usable by individuals with disabilities requiring such reasonblal accomadtion who are employees   Agency CANNOT negate its failure obligating its Agency to install   or members of the public, Section 508 complaints typically concern procurement decisions, not employment discriminationub-point 3rd 560
D.   Incomplete Record of Investigation (ROI)................................560

IV. OBJECTIONS & OTHER MATTERS OF CONCERN(S) RELATIVE TO ANY DECISION TO REVERSE........................................................560
A.   MOTION TO EXCLUDE AGENCY GENERAL COUNSEL [DHHS/OS/OIG] SUBMISSION IN BAD FAITH DURING 1st DAY OF INITIAL FACT-FINDER [AJ] HEARING 12b & MOVE THAT IT BE STRICKEN FROM THE RECORD SO AS NOT TO BE PRESENTED & CONFUSED WITH THE ISSUE, ALSO BROUGHT BY APPELLATE, OF, INCOMPLETE RECORD OF INVESTIGATION BY AGENCY EEO [DHHS/OS/EEO] COMPLIANCE DIVISION ~Pre-Employment Inquiries and Medical Questions & Examinations .................................................560
B.   Because of Appellant's  genetic Attention Deficit Disorder/Attention Deficit Hyper-activity Disorder (ADD/ADHD) and being prescribed Adderall XR, a control level II (CII) stimulant, the Appellant was subjugated to additional medical release associated with OPM Standard Form 86 that expired one year from date of electronic signature,   on 06/ /2009, releasing such information to conduct a national background investigation,

which means in 2011, without any medical release consent nor authorization from appellant, to cover-up its client(s) THEN Region IV (OIG/HHS/OS/OAS) Regional Inspector General for Audit Services, Peter J. Barbera and Region IV (OIG/HHS/OS/OAS)  Advance Techniques & Information Technology Audit Manager, Brian C. Johnson, merits system rule violation(s) and 42 U.S.C. § 2000ff-6 violation, the OCIG directed the Agency's Federal Occupational Health Services to conduct an unlawful   medical evaluation disguised as a pre-employment medical questionnaire/examination to OCIG's hired medical experts in violation of HIPPA, to deceive United States federal Courts Of Appeals and the American taxpayer(s) that the United States Department of Health and Human Services Office of the Secretary is the model disability employer when it has yet STILL NOT facilitated the Appellants reasonable electronic information technology accommodations/workplace modifications conveyed/purchased by Department of Defence............................................560

C.  Evidentiary matter of DHHS Agency's Counsel/(Office of Counsel to the Inspector General )(OCIG)  Fed. R. Civil P. 56(h) knowingly, bad faith submission of fraudulent, and, misleading  'Performance Management Appraisal Program' (PMAP) instructions non-applicable to Appellant THEN Complainant, Region IV (OIG/HHS/OS/OAS) Information Technology Auditor Law-enforcement official, M. John Jones, since new instructions had been issued superseding those introduced by Agency's OIG Management officials  [(OIG/DHHS/OS/OCIG) Deputy Branch Chief {advisor} THEN Senior Counsel Reynolds Wilson  and/or (OIG/HHS/OS/OCIG) Senior Counsel Alexis S. Conway THEN Associate Counsel   and/or THEN Region IV (OIG/HHS/OS/OAS) Regional Inspector General for Audit Services, Peter J. Barbera and/or   Region IV (OIG/HHS/OS/OAS)  Advance Techniques & Information Technology Audit Manager, Brian C. Johnson,] to its medical expert(s)/witnesses   in violation of   Fed. R. Evid. 702, 703, 705 during the first, of two, summary judgment's that were both denied by the  administrative trial judge along with a motion to compel from the United States [federal/central]   DHHS government{Agency},... a discovery request from the Agency's Office of Counsel to the Inspector General sent to the Appellant. ...............................561

D.  Submission of a knowly out date PAMP Instrution Manuel to cover the merits upon of which the Agency discriminated............................................561

E.  AJ failed to accutate presvre record on Appeal by not including the Direct Evidence included in Appellants Cross Motion, Complaint's motion to amend and Complaint's oppostion to Agency's motion for Summary Judgement, in addtion to Trial Exhbits presented for submision not allowed to submit that must be to presvere issues on appeal in accordance with MD 110 and AJ HANDBOOK ...............................................................561

F.   Tester Interview with Federal Reserve Bank of Atlanta confirmed Fraud that caused reputational harm; Color of the Law abuses by Executive branch Officials, and Retaliation ........................................................................ 561

G.   AJ faiure to presvre record of Exbhits not allowed to submit to presvere issues on appeal ........................................................................................ 562

Conclusion & RELIEF ........................................................................................ 562

Certificate of Compliance ................................................................................. 563

Certificate of Declaration & Service ............................................................... 563

# Table of Citations

**Cases**

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)......................... 501

*Howard v. Department of the Navy, EEOC Request no. 05970852 (February 11, 1999*.......... 103

Marbury v. Madison, 5 U.S. 137, 163 (1803).................................................................................. 41

*Mitchell v. Maurer, 293 U.S. 237, 244 (1934)*............................................................................... 41

*Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)................................................... 501, 534

University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013)...................... 502

**Statutes**

*42 U.S.C. § 2000ff-6 .................................................................................................................. 40

*29 U.S.C. § 794d* .................................................................................................................... 104

**31 U.S.C § 3512** ..................................................................................................................... 545

42 U.S.C. § 1981 ........................................................................................................................ 40

42 U.S.C. § 1982 ........................................................................................................................ 40

42 U.S.C. § 1983 ........................................................................................................................ 39

Exec. Order No. 13,162 ........................................................................................................... 211

Fla Stat, Sec. 413.08 ................................................................................................................ 501

Ga CodeAnn, Sec. 34-6A-4 ..................................................................................................... 502

Ga CodeAnn, Sec. 34-6A-5 ..................................................................................................... 502

**Rules**

*Fed. R. Evid. **803(5)**.............................................................................................................. 503

*Fed. R. Evid. 803(6)................................................................................................................. 504

**Constitutional Provisions**

U.S. CONST. amend. V ............................................................................................................. 38

U.S. CONST. amend. XIII .......................................................................................................... 40

**U.S. CONST. amend. XIV** ..................................................................................................... 39

# Statement of Subject Matter and Appellate Jurisdiction

The most fundamental principle of justice, is the principle that "equals should be treated equally and unequals unequally." In its contemporary form, **our forefathers, declared the new lands to be the land of Providence, and conferred it to be so by reason, that _ALL_, will be afforded, or created, in true equal**—this, is what is at bottom [the result; of that which is said to be and is most central to Authority:

29 U.S.C. 206(d), 633a, 791 and 794a; 42 U.S.C. 2000e-16 and 2000ff-6(e); E.O. 10577, 3 CFR, 1954-1958 Comp., p. 218; E.O. 11222, 3 CFR, 1964-1965 Comp., p. 306; E.O. 11478, 3 CFR, 1969 Comp., p. 133; E.O. 12106, 3 CFR, 1978 Comp., p. 263; Reorg. Plan No. 1 of 1978, 3 CFR, 1978 Comp., p. 321]

the root of that which the American Empire draws breath—from everlasting common law principal's,  such as Blackstone's Commentaries on the Laws of England, ... to that of her Mother, that gave birth to the Nations' of democracy, [the greatest democracy of the 'western World'—America; Canada—her sister] which has given rise to the Democratic Law governing body of World nations—the United Nations (UN).

*** —-'ceteris paribus'— ***

[IF] 'We, the People of this constitutional Republic' hold these truths to be self-evident, that _ALL_ mortals are created equal, that they are endowed by their 'Creator' with certain unalienable 'Rights,' that among these are 'Life, Liberty and the pursuit of Happiness'; THEN:

No person shall be deprived of life, liberty, or property, without due process of Law… U.S. Const. amend. V

Every person who, under the color of **any statute, ordinance, regulation, custom or usage, of any State** or Territory [or the **District of Columbia**], subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction there of to the depravation of any rights,

45

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit and equity, or other proper proceedings for redress. 42 U.S.C. § 1983 <(2006)>.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor denied to any person within its jurisdiction the **equal protection** of the laws. Section 1. U.S. Const. amend. XIV.

Defined first, a thousand years ago in the WESTERN WORLD, by Aristotle; this principle is sometimes expressed as follows: "Individuals should be treated the same, unless they differ in ways that are relevant to the situation in which they are involved"

**HERE NOW** is the dawn of humankind; a new language has been created by the 'homo *sapiens sapiens*'—'binary code' technology; 'Capitalism' has vanquished 'Communism' in economic ideology.

***—'inter alia'—***

*The United States government must ensure that all its personnel actions are "made free" of any discrimination based on race, color, religion, sex, national origin reprisal or disability for all employees and applicants for employment.* 42 U.S.C. § 2000e-16 29 U.S.C. § 791.

The Federal Government will serve to be the Equal Employment Opportunity Commission's Model Public Sector [and/or Public-Private Entity (e.g. the Federal Reserve Banks)] Disability Employer in establishing and maintaining non-discriminatory programs of equal employment opportunity and ensure non-discriminatory advancement of Americans with disabilities whom are qualified, competitively competing employees' or appointees' that require reasonable Electronic Information & Technology (EI&T) accommodation(s)/workplace modification(s); given the importance the [U.S. Supreme] Court has placed upon findings and purposes particularly in civil rights statutes like the Americas with Disabilities Act of 1990 (ADA), the ADA Amendments Act of 2008 (ADAAA) contains a detailed 'Findings and Purposes' section that the managers believe gives clear guidance to the courts and that they intend to be applied appropriately and consistently. Although not by

46

express provision, the Genetic Information Non-discrimination Act of 2008 (GINA) provide protection against discrimination and/or Title II GINA retaliation when an individual's genetic disorder is manifested by symptoms [e.g. Attention Deficit Disorder/Attention Deficit Hyper-activity Disorder (ADD/ADHD)].  < *42 U.S.C. § 2000ff-6 >

*ALL* persons within the jurisdiction of the United States shall have the same right in every State and Territory **to make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of *ALL* laws and proceedings for the security of persons and property as enjoyed by **white citizens**, and shall be subject to like punishment, pains, penalties, licenses, and exactions of every kind, and to NO other.  42 U.S.C. § 1981.

*ALL* citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.  42 U.S.C. § 1982.

Neither slavery nor **servitude**, except as a punishment for crime whereof the party shall have been duly convicted shall exist within the United States, or any place subject to their jurisdiction.  U.S. Const. amend. XIII.

*The Equal Employment Opportunity Commission (EEOC) is responsible for the review and evaluation of all federal sector equal employment opportunity (EEO) efforts.*

*The Department of Health and Human Services (HHS) Office of Inspector General (OIG) was the first OIG, established in 1976 to combat fraud, waste, abuse, and mismanagement.  The OIG protects the fiscal integrity of HHS programs, promotes their efficient operations, and safeguards the health and welfare of HHS beneficiaries. The Office of Audit Services (OAS) is one of six OIG organizational units, called components, which carry out OIG's mission and Agency oversight function.  Within this OAS component are Information Technology Auditors, whom are Agents of OIG deputized as Special Deputy U.S. marshals that  [;moreover, are {to be} considered experts under Fed. R. Evid. (FRE) 702, 703, and 705 whom] apply*

47

*an expert knowledge of Information Security Controls to audits of HHS Programs, Operations, Grantees and Contractors throughout the United States [of America]. And review the maintenance of computer-based systems through the conduct of comprehensive audits of general security and application specific controls.*

**\*\*\* Title VII, of the 1964 Civil Rights Act, protects against pattern and practice discrimination, that which includes a pattern and practice of disability employment discrimination \*\*\***

**\*\*\***""The very essence of Civil Liberty certainly consists in the Right[(s)] of every Individual [Citizen of its Republic] to claim the protection of the Law[(s)], whenever [such citizen(s)] receive[(s)] a[/n] injury. One of the first duties of government is to afford that protection." [Certainly,...in this-here Republic WE THE PEOPLE declared the United States... born in War and Revolution!]"

– {The great }Chief Justice John Marshall
*Marbury v. Madison, 5 U.S. 137, 163 (1803).*

YES, the United States Court of Appeals [here-in 'the capital of the South'— Atlanta, Georgia— ] for the Eleventh Circuit, has NOW proper jurisdiction to "let the shameful wall of exclusion, finally come tumbling down; as did the OFO Agency EEOC Administrator.

Ordinarily an appellate court does NOT give consideration to issues NOT raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal alone is competent to decide; it is equally essential in order that litigant may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with responsibility of fact finding.

"The Supreme Court has stated that "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer, 293 U.S. 237, 244 (1934).*

48

AUTHORITY.

**[Sec. 501.] 29 USC § 791   – Employment of individuals with disabilities**
[Sec. 504.] 29 USC § 794   – Nondiscrimination under federal grants and programs
[Sec. 507.] 29 USC § 794c – Interagency disability coordinating council


[Sec. 508.] 29 USC § 794d – Electronic and information technology
42 USC § 1987 – Obligates marshals and magistrates to enforce 42 U.S.C.§§ 1981 – 1986
Sections 1981 through 1986 of statutes codified under 42 USCS


Applicable Laws/Guidance
Public Law 94-505 – HEW Inspector General Act of 1976
Public Law 95-452 – as amended  - Inspector General Act of 1978
The Architectural Barriers Act, 42 U.S.C. § 4151 et seq is enforced by the Architectural and
Transportation Barriers Compliance Board and requires that buildings and facilities be accessible to
people with disabilities if they were constructed or altered by or on behalf of the federal government or
with certain federal funds, or leased to the government, after 1968.
Public Law 105-220 – Workforce Investment Act of 1998.
36 CFR Part 1194(c) – Electronic and Information Technology Accessibility Standards; Final Rule.
48 CFR, Chapter 1, Parts 2, 7, 10, 11, 12, and 39 – Federal Acquisition Regulations; Electronic and
Information Technology Accessibility.
29 CFR 1614.203 – Federal Sector Equal Employment Opportunity.
44 USC §3501 et seq. – Paperwork Reduction Act (PRA) of 1980, as amended.
40 USC §11101; 40 USC § 11103 – Information Technology Management Reform Act of 1996
(Clinger-Cohen Act).
Public Law 101-336 – Americans with Disabilities Act of 1990.
Public Law 100-542 – The Telecommunications Accessibility Enhancement Act of 1988.
Public Law 97-410 – Telecommunications for the Disabled Act of 1992.
Public Law 100-394 – Hearing Aid Compatibility Act of 1988.
OMB Circular A-130 – Management of Federal Information Resources.


Executive Order 13011 – Federal Information Technology.
Executive Order 13145 (2000) – Prohibits discrimination in federal employment on the basis
of genetic information.
Executive Order 13164 (2000) – Requires agencies to establish written procedures to
facilitate the provision of reasonable accommodations under the Rehabilitation Act.


Defined first, a thousand years ago in the WESTERN WORLD, by Aristotle; this
principle is sometimes expressed as follows: "Individuals should be treated the
same, unless they differ in ways that are relevant to the situation in which they
are involved"

HERE NOW is the dawn of humankind; a new language has been created by the 'homo *sapiens sapiens*'--'binary code' technology; 'Capitalism' has vanquished 'Communism' in economic ideology.

*\*\*\*—inter alia—\*\*\**

The United States government must ensure that all its personnel actions are "made free" of any discrimination based on race, color, religion, sex, national origin or reprisal and that each of its agencies has "an affirmative program of equal employment opportunity" for all employees and applicants for employment.

## "IMAGINING DISABILITY AS ORDINARY, AS THE TYPICAL RATHER THAN THE ATYPICAL HUMAN EXPERIENCE, CAN PROMOTE PRACTICES OF EQUALITY AND INCLUSION THAT BEGIN TO FULFILL THE PROMISE OF A DEMOCRATIC ORDER."\*

---

\* In substance the growth of the law is legislative. And this in a deeper sense than that what the courts declare to have always been the law is in fact new. It is legislative in its grounds. The very considerations which judges most rarely mention, and always with an apology, are the secret root from which the law draws all the juices of life. I mean, of course, considerations of what is expedient for the community concerned. Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but none the less traceable to views of public policy in the last analysis. . . . Law is administered by able and experienced [jurists], who know too much to sacrifice good sense to a syllogism. . . .                    Oliver Wendell Holmes, Jr., THE COMMON LAW (1881) 35, 36.

---

50





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

June 19, 2013

Via Email and US Mail

Moshea J. Jones
310 Woodstock Drive, S.W.
Atlanta, GA 30331

    RE:   Moshea J. Jones v. Department of Health & Human Services
            Docket No. 0120131578

Dear Mr. Jones:

This office is in receipt of an email dated June 15, 2013, in which you sought an extension of time to file a statement or brief in support of the above-referenced appeal. By letter dated June 17, 2013, the Commission denied your request. Upon further review, the Commission's rescinds its previous denial, and grants an extension until August 16, 2013. Any statement or brief you submit must be postmarked or received by the Commission by that date, with a copy sent to Department of Health & Human Services.

We note this is your third request for an extension of time to file a statement or brief in support of your appeal. No further extensions will be granted.

                     Sincerely,

                     Craig M. Barkley
                     Attorney Advisor
                     Compliance and Control Division

cc:    Department of Health & Human Services



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

July 20, 2012

Via Email and US Mail

Moshea J. Jones
310 Woodstock Dr SW
Atlanta, GA 30331

RE:    Moshea J. Jones v. Department of Health & Human Services
       Docket No. 0120122702

Dear Ms. Jones:

This office is in receipt of an email dated July 19, 2012, in which you sought an extension of time to file a statement or brief in support of the above-referenced appeal. An extension has been granted until September 17, 2012. Any statement or brief you submit must be postmarked or received by the Commission by that date, with a copy sent to Department of Health & Human Services. Please note that no further extensions will be granted.

Sincerely,

Craig M. Barkley
Attorney Advisor
Compliance and Control Division

cc:    Department of Health & Human Services

53



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

August 7, 2012

Via Email and US Mail

Moshea J. Jones
310 Woodstock Dr SW
Atlanta, GA 30331

      RE:    Moshea J. Jones v. Department of Health & Human Services
             Docket No. 0120122573

Dear Mr. Jones:

This office is in receipt of an email dated August 1, 2012, in which you sought an extension of time to file a statement or brief in support of the above-referenced appeal. An extension has been granted until September 7, 2012. Any statement or brief you submit must be postmarked or received by the Commission by that date, with a copy sent to Department of Health & Human Services.

Please note that no further extensions will be granted.

Sincerely,

Craig M. Barkley
Attorney Advisor
Compliance and Control Division

cc:    Department of Health & Human Services

"Let the shameful wall of exclusion finally come tumbling down."

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**

## ACKNOWLEDGEMENT LETTER

### CERTIFIED MAIL – RETURN RECEIPT REQUESTED
### NO.: 7005-1160-0004-5827-1832

May 19, 2010

Mr. Moshea J. Jones
310 Woodstock Drive
Atlanta, GA 30331

             Re:     Agency File No.: HHS-OS-0034-2010
                    Date Filed Formal: May 15, 2010

Dear Mr. Jones:

This is to acknowledge receipt of the above-referenced discrimination complaint filed against the Department of Health and Human Services (DHHS), Office of the Secretary, Office of Inspector General, Office of Audit Services on May 15, 2010. Please refer to the Agency File No. listed above in all correspondence related to this matter.

The complaint will be processed pursuant to the Equal Employment Opportunity Commission's (EEOC) Complaint Regulations outlined in 29 Code of Federal Regulations (C.F.R.) Part 1614.

You will be notified concerning which claim(s) are accepted or dismissed for processing. You will also be notified of applicable appeal rights. If additional information is needed to clarify the above-referenced complaint, you will be contacted promptly.

The investigation of this complaint must be completed within 120 calendar days, unless you submitted an amendment or agreed in writing to extend the time period for the investigation. If you have not received the Report of Investigation (ROI) within 120 calendar days from the filing date of the stated complaint, you may request an appeal before the Merit System Protection Board (MSPB) as specified in 5 C.F.R. Section 1201.154(b)(2) or you may file a civil action as specified in 29 C.F.R. Part 1614.310 (g), but not both.

                      **Merit Systems Protection Board**
                      **Washington DC Regional Office**
                      **1800 Diagonal Road, Suite 205**
                      **Alexandria, VA 22314-2840**

#### Statement of Rights

At the conclusion of the investigation, the Agency will provide you with a copy of the Report of Investigation (ROI). Pursuant to 29 C.F.R. § 1614.302(d)(2) of the Equal Employment

Page 2 – Jones, Moshea J. – Agency No. HHS-OS-0034-2010:

Opportunity Commission's (EEOC) regulations, within forty-five (45) calendar days following completion of the investigation, the Agency will issue a final decision. If a final decision is not issued within 120 calendar days of the date of filing, you may appeal the matter to the Merit Systems Protection Board (MSPB) at any time thereafter, as specified in 5 C.F.R. § 1201.154(b)(2), or you may file a civil action as specified in 29 C.F.R. § 1614.310(g), but not both.

### Appeal Rights

If dissatisfied with the Agency's final decision upon issuance, you have the right to appeal the decision to the MSPB within thirty (30) calendar days of receipt of the notice, or you can file a civil action as provided in 29 C.F.R. § 1614.310.

Should you elect to file an appeal with the MSPB in connection with this matter, the request must be transmitted to:

It is your obligation to keep the EEO Office informed of your current mailing address and telephone number. Your failure to keep us informed may cause delay in processing the complaint or lead to dismissal. Additionally, in the event that you engage[s] the services of a licensed attorney to represent you in this matter or make a change in designation of representation, you must notify us in writing immediately. Failure to make such notification may result in denial of fees or costs to which an attorney might otherwise be entitled.

Please address all correspondence and inquiries related to this complaint to:

> Michael A. Chew
> Acting Director, Office of Diversity Management & EEO
> (ODME) - Operations
> Department of Health and Human Services
> 200 Independence Avenue, S.W., Room 347-F
> Washington, DC 20201

Should you have inquiries on the status of this complaint, you may contact me at (202) 401-9072.

Sincerely,

Herbert L. Johnson
EEO Specialist
ODME- Operations
Equal Employment Opportunity Office



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

### ACKNOWLEDGEMENT LETTER

April 27, 2010

#### CERTIFIED MAIL – RETURN RECEIPT REQUESTED
#### NO.: 7005 1160 0004 5827 0231

Moshea John Jones
310 Woodstock Drive
Atlanta, Georgia 30331

RE: Moshea John Jones
Agency File No.: HHS-OS-0013-2010
Date Filed Formal: February 16, 2010

Dear Mr. Jones:

This is to acknowledge receipt of the above-referenced discrimination complaint filed against the Department of Health and Human Services (DHHS), Office of the Secretary on February 16, 2010. Please refer to the Agency File No. listed above in all correspondence related to this matter.

The complaint will be processed pursuant to the Equal Employment Opportunity Commission's (EEOC) Complaint Regulations outlined in Title 29 Code of Federal Regulations (C.F.R.) Part 1614.

You will be notified concerning which claim(s) are accepted for processing or dismissed. You will also be notified of applicable appeal rights. If additional information is needed to clarify the above-referenced complaint, you will be contacted promptly.

The investigation of this complaint must be completed within 180 calendar days, unless [you/ Complainant] submitted an amendment or agreed in writing to extend the time period for the investigation. If you have not received the Report of Investigation (ROI) within 180 calendar days from the filing date of the stated complaint, you may request a hearing and decision from EEOC or an immediate final decision from the Department. Should you elect a hearing in connection with this matter, the hearing request must be transmitted to:

**U.S Equal Employment Opportunity Commission**
**Atlanta District Office**
**100 Alabama Street, Suite 4R30**
**Atlanta, GA 30303**

Revised 10/05

95

Page 2 – Moshea John Jones – Agency File No.: HHS-OS-0013-2010

In the absence of a complaint amendment or agreed upon extension, you have the right to file a civil action within 180 calendar days from the date of filing an individual or class complaint, if an appeal has not been filed and final action has not been taken. If your complaint has been amended, the investigation shall be completed within the earlier of 180 calendar days after the last amendment to the complaint or 360 calendar days after the filing of the original complaint, except that you may request a hearing from the EEOC on a consolidated complaint any time after 180 calendar days from the date of the first filed complaint.

It is your obligation to keep this Office, Office of the Secretary, Equal Employment Opportunities informed of your current mailing address and telephone number. Your failure to keep us informed may cause delay in processing the complaint or lead to dismissal. Additionally, in the event that you engage the services of a licensed attorney to represent you in this matter or make a change in designation of representation, you must notify us in writing immediately. Failure to make such notification may result in denial of fees or costs to which an attorney might otherwise be entitled.

Please address all correspondence and inquiries related to this complaint to:

> Michael A. Chew
> **Acting Director Office of Diversity Management and**
> **Equal Employment Opportunity - Operations**

If you have any questions regarding the above, please contact David W. Chilton, Equal Employment Opportunity Specialist at (202) 401-9071.

FOR THE OFFICE OF DIVERSITY MANAGEMENT AND EEO - OPERATIONS:

Sincerely,

Michael A. Chew
Acting Director, Office of Diversity Management
and Equal Employment Opportunity - Operations
Department of Health and Human Services

Revised 10/05

1.6

96



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
Washington, DC 20224

May 01, 2007

TO:      MOSHEA J JONES
310 WOODSTOCK DR
ATLANTA GA 30331-0000

FROM:     *Jayne M. Keuh*

*for* CHIEF, NATIONAL BACKGROUND INVESTIGATIONS CENTER

SUBJECT:     Notice of Completion of Suitability Investigation

Employment with the Internal Revenue Service requires both good character and a high
degree of personal integrity. I am pleased to advise you that the background
investigation conducted incidental to your employment with the IRS has been
completed and it has been determined that you are suitable to occupy your current
position.

Attached is a copy of Form 2077 (c), Security Determination Action, which documents
completion of your investigation. This copy is for your records. The original Form 2077
(c) has been sent to your servicing Transactional Processing Center for inclusion in
your Official Personnel Folder (OPF).

Attachment



NEW ENGLAND FINANCIAL™
A MetLife Affiliate

July 18, 2004

## LETTER OF COMMENDATION

### FOR MOSHEA JONES

It is with great admiration and honor that I give this letter of commendation to Mr. Jones. To say that he is an excellent employee would not give credence to the outstanding job that he performed for me as an intern. Moshea is invaluable to me as an assistant, and I am confident that he will be successful in the business world.

He is:

- Dependable
- Punctual
- Creative
- Respectful
- Has a great personality
- Mature
- Business like in his attire and demeanor

I could give you more information about this fine young man, but suffice it to say that words cannot express what a great impression he has made on me. He has helped me tremendously in moving my business to a higher level!

Donna J. Tate
Financial Advisor

NEW ENGLAND FINANCIAL.
945 EAST PACES FERRY ROAD, SUITE 1800, ATLANTA, GEORGIA 30326.
T 404-266-1240    F 404-237-7420

New England Life Insurance Company, Boston, Massachusetts

217

# Fulton County

## Dept. Information & Technology

To whom it may concern:

Seldom does a person get an opportunity to work with an inspiring youth, and find a reflection of oneself. Moshea should add his name to a growing list of distinguish gentlemen. His work ethics are only surpassed by his willingness to learn and achieve. I am confident he will be successful in whatever field he chooses. Moshea is a fine example of tomorrows leaders, molded by society, shaped by the hands of excellence. It has been an honor to know this young man he has left a lasting impression on those whom have come in contact with him. If time permits, we may witness greatness on a grand scale.

Sincerely,

R E. Walker

Information & Technology

404  730-7334

The purpose of the Federal Career Intern Program (FCIP) is "to attract exceptional men and women to the federal workforce who have diverse professional experiences, academic training, and competencies, and to prepare

218